(Surrogate's Court, New York County. February, 1908.)

WILLS—CONSTRUCTION—INTESTACY.

A will in which testator bequeathed to each of his ten children one-tenth of his residuary estate, the portion to his daughters being held in trust, with remainder to their issue, no provision being made in the event of their dying without issue, had been construed by the courts to mean that as to childless daughters the testator died intestate as to the remainder, and that such remainder should be distributed among the heirs at law of the testator. On the death of a childless daughter, a surviving daughter, also childless, received her interest in such residuary estate, and made a will in which she provided that all of the residue and remainder of her estate should be disposed of in a certain manner. *Held*, that the daughter did not die intestate as to her distributive share in the trust fund of her sister dying childless, but that it passed under her will to her residuary legatee.

In the matter of the judicial settlement of Samuel S. Howland, executor of Louisa Howland Clendenin. Answers of respondents overruled.

Stetson; Jennings & Russell, for executor.

James Russell Soley, for residuary legatees.

Winthrop & Stimson, for Meredith Howland, Jr., Dulany Howland, and Maud H. Pyne.

Gannon & Curry, for Gardiner G. Howland.

William Harrison, for Meredith Howland.

John Hackett, for James Roosevelt Roosevelt.

Hall Park McCullough, for Louis M..Howland.

Ewing & Ewing, for Renee H. Lepoids.

Huntington W. Merchant, for Elizabeth W. Merchant and others.

Hoppin & Berard, for next of kin.

BECKETT, S. Upon the judicial settlement of the account of Samuel S. Howland, as executor, issues are raised regarding the construction of paragraph 29 of decedent's will, dated March 15, 1904. Gardiner G. Howland, decedent's father, died December 9, 1851, leaving a will in which he bequeathed to each of his ten children one-tenth part of his residuary estate. In the case of his five daughters, however,.such portions were to be held in trust for them during their lives, with remainder to their issue. He made no provision as to the disposition of such trust funds for said daughters in the event of their dying without issue. Each one-tenth portion amounted to about $200,000. About the year 1889, some 38 years after her father's death, this decedent took a very active part in a litigation respecting the construction of paragraph 21 of his will. Such litigation, I believe, is very largely the key to the correct construction here. It—Meredith Howland, as Trustee, etc., Respondent, v. Louisa Howland Clendenin (this decedent) et al., appellants, and Louisa M. Howland et al., respondents, 134 N. Y. 305, 31 N. E. 977—must have been a matter of supreme importance to her during the years 1889 to 1892, inclusive. Follett, C. J., writing the opinion (decided October 1, 1892), describes decedent's position:

"This will (Gardiner G. Howland's) was duly probated and the estate settled, and the residue divided pursuant to this clause (paragraph 21), into 10 equal shares, one of which was set apart for Louisa H. Clendenin and another for Joanna H. Grinnell, both daughters of the testator, neither of whom have borne children and both of whom have passed the child-bearing age. A dispute arose between the said two daughters on the one side and their surviving brothers and sisters and the descendants of the brothers and sisters who have died on the other side as to the disposition which is to be made of the shares so set apart for said two daughters after their deaths without leaving children. Louisa H. Clendenin and Joanna H. Grinnell assert that, in the event that they die without leaving children, the portions set apart for them will form part of their respective estates, and that their personal representatives will be entitled to receive the same from the then trustees of said trust, and that they, the sisters, are entitled to dispose of their portions by will, and that in case they die intestate their administrators will be entitled to receive said capital from said trustees and dispose of it in accordance with the statutes of this state for the disposition of estates of persons dying intestate. On the contrary, the respondents claim that in said event the capital must be distributed among the surviving children of the testator and the representatives of such as may then be deceased, as if the same were property as to which the testator .had died intestate, or that the capital must be divided among the issue of the testator who may then be surviving, per stirpes."

Decedent's counsel urged a construction of her father's will that Follett, C. J., says (page 309 of 134 N. Y., page 979 of 31 N. E.) "would render the shares of those daughters" (i. e., the two $200,000 trust funds) "dying without issue subject to the claims of their creditors, and to their power to sell their portions to take effect after death, or to dispose of them by will, and if not disposed of by will or contract they would, after the payment of debts, be distributed among their next of kin.". The Court of Appeals affirmed the judgment of the lower court, holding that the childless daughters had, under the will of their father, no interest in the remainder of their respective trust funds, but that as to such remainders, respectively, the said Gardiner G. Howland died intestate. The judgment on the remittitur was entered November 29, 1892, and provided, among other things, as follows:

"That in case either of the said daughters, Louisa Howland Clendenin or Joanna H. Grinnell, shall die leaving no issue nor issue of any deceased issue surviving her, then, inasmuch as by the terms of the said trust no provision is made for the disposition in that event of the capital of the trust estate, the share of the testator's estate devoted to the creation of the trust of the person so dying shall, upon her decease leaving no issue nor issue of any deceased issue surviving, be distributed among the heirs at law and next of kin of the said testator."

May we not presume that the decedent knew the law and the final result of this case? Is it conceivable that her then counsel, a former surrogate of this county, learned, far-seeing and considerate, did not clearly advise her of the outcome of her cause and her precise and exact property relations resulting therefrom? We can entertain no other presumption. She, who seems to have been the leading litigant, was defeated both in the lower court and in the Court of Appeals. The litigation was so protracted and important, affected such large amount of property, involved subjects so near a woman's heart, was conducted upon both sides by such eminent counsel, that it is impossible to conceive that the determination escaped her notice, or that she was not advised of its final outcome. She must be presumed to have known that such intestate distribution was to be in tenths, and that she (or her estate), as one of the ten children of Gardiner G. Howland, would be a distributee of such a tenth as one of his next of kin. Doane v. Mercantile Trust Co., 160 N. Y. 494, 55 N. E. 296. Indeed, after her death it was so decided respecting this very estate in Grinnell v. Howland, 51 Misc. Rep. 132, 100 N. Y. Supp. 765. Her executor received such one-tenth share distributable at her death (about $19,-500), and in the pending account alleges that he "does not know whether these moneys shown in schedule A3 should be distributed among the testatrix's next of kin as property of which she died intestate, and asks the direction of the surrogate in respect to the distribution thereof." Also he further alleges:

"In case the surrogate shall decide that the moneys * * * are to be distributed among the next of kin of testatrix, the executor will desire the instructions of the surrogate as to whether the expenses of administration of the estate and debts of decedent shall be paid out of the residuary estate or out of the funds, * * * or how otherwise such expenses and debts shall be paid."

Decedent's residuary legatees on one side and her next of kin upon the other contend as to the construction of paragraph 29 of her will; the former claiming that this fund passes to them, and the latter urging that she died intestate as to this particular fund, and that it was expressly excluded from said residuary clause, she not knowing or realizing that it belonged in any sense to her—nay, that she herself has said by the very terms of that clause that it does not. We must not overlook the fact that Judge Follett said, in construing her father's will (134 N. Y. 308, 31 N. E. 979), as it has a bearing upon the law of the construction of her will also:

"While engaged in interpreting this clause it must constantly be borne in mind that it is a residuary clause, by which the testator probably intended to dispose of all of his estate not devised and bequeathed by the earlier provisions of the will, and that in construing wills, and especially residuary clauses, the courts lean toward an interpretation which will prevent partial intestacy." Morton v. Woodbury, 153 N. Y. 243, 254, 255, 259, 47 N. E. 283; Mills v. Tompkins, 110 App. Div. 212, 97 N. Y. Supp. 9; Meeks v. Meeks, 161 N. Y. 66, 55 N. E. 278; Lamb v. Lamb, 131 N. Y. 227, 30 N. E. 133; Riker v. Cornwell, 113 N. Y. 115, 127, 20 N. E. 602.

I am of the opinion that this fund passes under the residuary clause to the residuary legatees. If ever a will was drawn with care and precision, with an eye single to the disposal of the entire estate, it is the will of Louisa Howland Clendenin. From paragraph 1 to 28, inclusive, with insight and enumeration which are inventorial in their character, decedent has bequeathed very many personal effects; and to make assurance doubly sure that she is disposing by her testamentary papers of all that it is possible for her to bequeath, or "I am or shall become entitled to," on August 10, 1905, after the will we are construing was made, and after the death of her sister, Joanna Howland Grinnell, coappellant with her in Howland v. Clendenin, knowing that she would receive by reason of that "intestacy decision" one-tenth of Joanna's trust fund, she adds a codicil to her will whereby, under paragraph 3, she completely disposes of such additions to her estate. Referring again, to Morton v. Woodbury, 153 N. Y. 259, 47 N. E. 288, Martin, J., says:

"That the testatrix in this case did not intend to die intestate as to any portion of her estate is entirely certain."

I say that these words most aptly describe the condition of mind of this decedent. She was determined to give away all that she possessed or had the power to convey. She abhorred intestacy. Her father, in the face of her earnest opposition, had been declared to have died intestate. She had taken her case to the Court of Appeals and received final denial of her contention, held for many years, that she should, and by right ought to, take equal stand with her brothers and child-bearing sisters in owning or at least disposing by her will of the $200,000 fund that her father had, or ought to have, given her. I believe that when she drew her will she had the bitterness and, to her, unfairness of that defeat in her mind. She says (the italics being mine):

"Twenty-Ninth. As I have no power by my will to dispose of the property held in trust for me during my life *under the will* of my late father, Gardiner

G. Howland, and as the said property will upon my death be distributed among the members of my family, and as the amount of *property actually owned by me and of which I have power to dispose of by will* is small, I have selected certain of the women of my family to receive *all the residue of the estate* and *property of which I have power to dispose,* and accordingly I give, devise and bequeath all the rest, residue and remainder of the estate and property, real and personal, of every kind and nature whatsoever and wheresoever situated, *of which I shall die seised or possessed, or in which at my death I shall have any interest, of which I can dispose,* including any lapsed bequests, as follows."

Does she not first resent the Howland v. Clendenin decision which refused her the right to dispose of the entire fund? Then does she not proceed to consider (from her own standpoint) what she herself possesses which she has not already given away, and then what she further has the power to give? And as the English king's testament divided his children into two classes, the children of the spear and the children of the distaff, so she, with inventorial mind, divides what she has remaining to give away into two classes, and thus enumerates: (1) *"Property actually owned by me"* (and her mind then passes to her distributive share, which is to come to her own estate by reason of her own death, because the Court of Appeals had decided her father died intestate as to her fund), and (2) *"and of which I have power to dispose by my. will."* Again: (1) "I have selected certain of the women of my family to receive *all the residue of the estate* and (2) *property of which I have power to dispose."* Still again, after the words of gift of all the rest, residue, and remainder of the estate, see her repeat for the third time these words of discrimination and classification: (1) "Of *which I shall die seised or possessed,"* (2) "or *in which at my death I shall have any interest of which I can dispose."*

A residuary gift in the language used by this testatrix includes, not only.her property as she knows it, but property of which she may die possessed, of which at the time of making her will she had no expectation whatsoever. If the decedent was uncertain as to the disposition which the law would make of this one-tenth interest, her mere uncertainty could not except it out of the terms of her residuary gift. It would be necessary for her to distinctly and absolutely exclude it. I cannot interpret the provisions of paragraph 29 of this will as a distinct and absolute exclusion. No New York authority or American case has been called to my attention in the able briefs of counsel for the next of kin, nor have I found any, which in any sense might be regarded as a precedent for taking this fund out of the terms of the residuary gift. As Lord Halsbury, Chancellor of England, said in a House of Lords case:

"I have often had occasion to say of a case upon the construction of a will, that was a decision on a particular will, the judge looking at every word of the special clauses. How can it be an authority upon the construction of another and a different will?" Scale v. Rawlins, Law Reports 1892, App. Cas. 342, 343.

Counsel for the next of kin have cited Circuitt v. Perry, 23 Beav. 275 (1856) 53 Eng. Rep. Reprint, 108, Hawks v. Longridge, 29 L. T. Rep. (N. S.) 449 (1873), and Harris v. Harris, Ir. Rep. 3 Eq. 610; but these cases seem to have been overruled by Matter of Bagot, Paton v. Orm-

erod, 3 Ch. Div. (1893) 348. In that case the testatrix recited in her will that she had settled upon her daughter, Ethel Jane Paton, a particular property which in fact was still in her disposition. The will contained other recitals and bequests of other properties, and also a residuary bequest in favor of Charles Edward Ormerod. The Court of Appeal, affirming the decision of the judge below, held that the property mentioned in the recital as settled upon Ethel Paton, and which was still within the disposition of the testatrix passed under the residuary gift to Ormerod. The following is an extract from the opinion of Lindley, one of the three Lords Justices of Appeal:

"Now, the residuary bequest is expressed in terms wide enough to include whatever personal estate not otherwise disposed of by her will the testatrix might have at her death, whether she knew that she had it or not. She intended whatever was hers, and was not otherwise disposed of, to go to her residuary legatee. It is true that she did not intend this particular fund to go at once to him, because she thought she had settled it already, and that, therefore, it was not hers. She made a mistake. It was hers, and the residuary bequest in terms carries it. * * * But then it is said that to construe the will so as to include this fund in the residuary bequest will be contrary to several decisions, viz., Circuitt v. Perry, 23 Beav. 275. Harris v. Harris, Ir. R. 3 Eq. 610, Hawks v. Longridge, 29 L. T. N. S. 449, and Clibborn v. Clibborn, 9 Ir. Jur. 381. Certainly in each of these cases the courts held that a fund as to which a testator had made a mistake did not fall into the residue of his estate. But I cannot extract from those cases any principle of law which compels me to hold that there has been an intestacy in this case. In Circuitt v. Perry Lord Romilly seems to have intimated that a residuary bequest would not include property which a testator thought was not his. But this is a proposition which cannot be supported. In Harris v. Harris the principle was much more correctly expressed in the following language of the Vice Chancellor of Ireland: 'In considering this question the real point to be considered is that a residuary devisee is not to be excluded except by express words used by the testator in the will, showing an intentional exclusion of the property in question from the operation of the residuary clause. If the words fell short of that, the property passes under the residuary devise, and no residuary devise could be more extensive than this.' Even this language, however, does not go quite far enough. The intention to exclude must not be founded on a mistake as to the ownership of the property. It must be an intention to exclude the property, even if it is the testator's to dispose of. Notwithstanding Circuitt v. Perry and the other cases referred to, in which, in my opinion, sufficient effect was not given to a residuary clause, and which, therefore, I decline to follow, I am of opinion that the decision appealed from is correct, and that the appeal must be dismissed, with costs."

Having reached the above conclusions, there is no occasion to pass upon the second request for instructions pleaded by the executor. The answers of respondents Meredith Howland and James Roosevelt Roosevelt are overruled. Costs to the executor and residuary legatees.

Ordered accordingly.