In the Matter of the Gladstone Special Road District of Clay County, Missouri, Respondent, v. The County Court of Clay County, Missouri, Judge L. M. Bywaters, Judge Noah Hart and Judge Ford White, Judges of the County Court of Clay County, Missouri, Appellants, No. 45038—293 S. W. (2d) 351.

Division Two, July 9, 1956.

Rehearing Denied, September 10, 1956.

*Francis G. Hale* and *Robert E. Coleberd* for appellants; *Arthur R. Kincaid, William B. Waters* and *Martin E. Lawson* of counsel.

*Williams & Norton* for respondent.

[352] BOHLING, C.—This is a declaratory judgment action by the Gladstone Special Road District of Clay County, Missouri, against the County Court of Clay County, Missouri, Judge L. M. Bywaters, Judge Noah Hart and Judge Ford White, Judges of the County Court of Clay County, Missouri. The boundaries of plaintiff coincide with the boundaries of the City of Gladstone; and the issue presented by the parties is whether it is the duty of the county court to credit and pay to plaintiff four-fifths of the road and bridge taxes collected upon property within plaintiff's boundaries, as contended by plaintiff, or only one-fourth of said four-fifths, as contended by

defendants. The judgment was for plaintiff. Defendants have appealed.

The case involves "the construction of the revenue laws of this state" and we have appellate jurisdiction. Mo. Const. Art. V, § .3; Lamar Township v. City of Lamar, 261 Mo. 171, 177, 169 S. W. 12, Ann. Cas. 1916D, 740; Wright County v. Farmers' & Merchants' Bk., Mo., 30 S. W. 2d 32, 33[.1]. See also T. J. Moss Tie Co. v. Allen, 318 Mo. 440, 300 S. W. 486[1].

The case was submitted on the following stipulation (formal recitals omitted) :

"1. That defendants L. M. Bywaters, Noah Hart and Ford White are the Judges of the County Court of Clay County, State of Missouri.

"2. That Gladstone Special Road District of Clay County, plaintiff herein, was duly organized and formed April 7, 1954, under Sections 233.010 to 233.165 M. R. S. 1949; that said Special Road District is confined geographically to the city limits of the City of Gladstone, a fourth class city 'which was incorporated November 19, 1952, under the laws of the State of Missouri; that said city will be completely surrounded by the City of Kansas City, Missouri, on January 1, 1959, and thereafter.

"3. That 80 per cent of the taxes collected under Section 233.125 M. R. S. 1949 in said Special Road District to February 28, 1955, aggregate the sum of $9138.88; that 25 per cent thereof, namely: The sum of $2284.72 has been set aside by the county treasurer in Special Road District No. 6 Fund, which is plaintiff Special Road District; that 75 per cent of said fund, namely: The sum of $6854.16 has been deposited in an escrow account by said county treasurer to await the outcome of this particular litigation.

"4. That plaintiff herein has demanded that defendants herein pay over to plaintiff the aggregate amount of said taxes, namely: The sum of $9138.88; that defendants have refused to comply with plaintiff's request."

We quote (emphasis ours) §§ 233.125, 137.555, 233.095 and 233.100. (Statutory references are to RSMo 1949, VAMS, unless otherwise indicated.)

Section 233.125 provides: "In all counties in this state where a special road district, * * has * * been organized * * under sections 233.010 to 233.165, and where money shall be collected for road and bridge purposes under the provisions of section 137.555 upon property within such special road district * * or where money shall be collected for pool [353] or billiard table licenses upon any business within such special road district, * * *the county court shall,* as such taxes or licenses are paid and collected, *apportion and set aside to the credit of such special road district* * * from which said taxes were collected, *four-fifths of such* part or portion of said *road and bridge tax so arising from and collected and paid upon* any *property* lying and

being *within any such special road district,* * * and also one-half of the amount collected for pool and billiard table licenses so collected from such business carried on or conducted within the limits of such special road district; *and the county court shall, upon application* by said commissioners of such special road district * * *draw warrants* upon the county treasurer, *payable to* the commissioners of *such special road district* * * or the treasury thereof, *for four-fifths* of such part or portion *of said road and bridge tax so collected upon property* lying and being *within such special road district,* * * and also one-half of the amount collected, for pool and billiard table licenses so collected from such business carried on or conducted within the limits of such special road district * *.''

Section 137.555 provides: ''* * the county court * * may levy an additional tax, not exceeding thirty-five cents on each one hundred dollars assessed valuation, all of such tax to be collected and turned into the county treasury, where it shall be known * * as 'The Special Road and Bridge Fund' to be used for road and bridge purposes and for no other purpose whatever; *provided, however, that all* that part or portion *of said tax which shall* arise from and *be* collected and *paid upon any property* lying and being *within any special road district shall be paid into the county treasury and four-fifths of such part or portion* of said tax so arising from and collected and *paid upon any property* lying and being *within any such special road district shall be placed to the credit of such special road district* from which it arose *and shall be paid* out *to such special road district upon warrants of the county court,* in favor of the commissioners or treasurer of the district as the case may be; provided further, that * * the one-fifth part retained in the county treasury may, in the discretion of the county court, be used in improving or repairing any street in any incorporated city or village in the county, if said street shall form a part of a continuous highway of said county leading through such city or village.''

Section 233.095 provides: ''*Said board shall have authority to expend not more than one-fourth of the revenue* * * paid into its treasury *for* the purpose of *grading and repairing* any *roads or streets within the corporate limits of any city* within said special road district in conformity with the established grade of said roads and streets in said cities and for the purpose of constructing and maintaining macadam, gravel, rock or paved roads or streets within the corporate limits of any city within the said special road district in conformity with the established grade of said roads and streets in said city * *.''

Section 233.100 provides: ''Said boards may repair, grade, gravel, macadamize or pave any road in its district but nothing herein shall be taken or construed as enlarging the powers of the boards to expend money upon roads and streets within the corporate limits of any city within said special road district as limited by Section 233.095.''

The court found, so far as material here, that under Section 233.125 the county court was required to pay to plaintiff four-fifths of the road and bridge tax collected upon property within plaintiff district and one-half of the pool and billiard table licenses collected within plaintiff district; that the enforcement of Sections 233.095 and 233.100 against plaintiff would cause an absurd result in that plaintiff would accumulate large sums of money without any possible means of using the same; that Sections 233.095 and 233.100 were not applicable to plaintiff "because they are ambiguous and doubtful in [354] their application to this plaintiff and said sections clearly contemplate a road district containing a rural area, which is not existent in this instance," and that plaintiff could spend its entire income on grading and repairing roads and streets in the City of Gladstone. Judgment was entered ordering defendants to pay to plaintiff the $6,854.16 held in escrow.

We agree with the trial court that Sections 233.095 and 233.100 "clearly contemplate a road district containing a rural area, which is not existent in" plaintiff. But, Section 233.095 is the only section authorizing any expenditure by such special road districts on "any roads or streets within the corporate limits of any city within said special road district," which authority is subjected to compliance "with the established grade of said roads and streets in said cities." In addition, Section 233.100 emphasizes that any authority to expend such funds on city roads and streets is restricted to that conferred by Section 233.095.

A basic issue of plaintiff's right of recovery is the authority of special road districts under Sections 233.010 through 233.165 to expend all of their funds on city roads and streets, as urged by plaintiff. Plaintiff directs our attention to no provision of the law to that effect. Supreme Court Rule 3.27 authorizes the consideration of plain errors affecting substantial rights on appeal in the discretion of the court, though not raised in the trial court or preserved for review, when deemed proper to prevent manifest injustice. Nelson v. Kansas City, 360 Mo. 143, 227 S. W. 2d 672, 674 [4].

The special road district law here involved first appeared as Laws 1895, p. 253. We refer to certain provisions, not mentioned supra, of the original act and as they now exist so far as pertinent here.

The original act, according to its title, was "to provide for working and improving the public roads, by the organization of special road districts of territory not more than six miles square, in which is located a city of the third or fourth class, except cities of the third class organized under special charter * *." Laws 1895, p. 253. We do not find the title changed by subsequent legislation.

Original Section 1, conforming to said title, provided that territory "not exceeding six miles square wherein is located a town or city of the third or fourth class, except cities of the third class organized

under special charter" could be organized into a special road district. Laws 1895, p. 253. Said section (following changes by Laws 1903, p. 260, 261; Laws 1909, p. 765, and Laws 1945, p. 1494) now reads: "Territory not exceeding eight miles square, wherein is located any city, town or village containing less than one hundred thousand inhabitants * *" may be so organized. Section 233.010.

The three commissioners constituting the "board" are appointed by the mayor and members of the city council of any city or town within such district, together with the members of the county court of the county in which the district is located. Section 233.040; Laws 1895, p. 253, Section 2. State ex inf. v. Meyer, 321 Mo. 858, 12 S. W. 2d 489, 490. The mayor and members of the council of a town ninety per cent within and ten per cent outside of the boundaries of such special road district may not participate in the selection of the commissioners of the district, because " 'within' as employed in the statute was not intended to permit the mayor and board of aldermen of a town partly within and partly without or substantially within the territorial limits of the road district to vote in the selection of the district's commissioners." Town of Alexandria v. Clark County, Mo., 231 S. W. 2d 622, 624[4].

"Said board shall have sole, exclusive and entire control and jurisdiction over all public highways within its district outside the corporate limits of any city or village therein to construct, improve and repair such highways" et cetera. Section 233.070, unchanged [355] from Laws 1895, p. 254, Section 9. Cities of the fourth class have "exclusive control over all streets, alleys, avenues and public highways within the limits of such city." Section 88.670 (3); Laws 1895, p. 84, Section 85. The statutes mentioned do not create two distinct municipal corporations to exercise the same powers, jurisdiction and privileges coincidentally. See Wellston Fire Protection Dist. v. State Bk. & T. Co., Mo. App., 282 S. W. 2d 171, 175 ['7]. Public highways within special road districts "outside the corporate limits of any city or village therein" are the highways over which the district's board has jurisdiction. The authorization of the expenditure of funds of the district on city streets was incidental to the improvement and use of the highways outside of the city limits. As first enacted, now Section 233.095 disclosed an expressed legislative intent to restrict the expenditure of "one-fourth" of the district's funds on streets of cities within the district to "extensions or continuations of similar roads already constructed outside of such corporate limits." Laws 1903, p. 261, H. B. 613; Laws 1911, p. 370, S. B. 241. Section 233.095 was put in its present form by 1st Ex. Ses. 1921, p. 169, H. B. 22. At the same session, the Legislature added the provision in now Section 233.100 restricting the powers of such special road districts to expend money upon city roads and streets to that conferred by Section 233.095. 1st Ex. Ses. 1921, p. 171, H. B. 25.

Construing Sections 233.010 through 233.165 from the words used, and seeking their plain and rational meaning, the promotion of their objects, and their manifest purposes, considered historically (Union El. Co. v. Morris, 359 Mo. 564, 222 S. W. 2d 767, 770[2]), the intent of the Legislature appears to be plain that such special road districts should embrace a rural area. The act as a whole, as well as Sections 233.095 and 233.100, contemplates a road district having a rural area. The boundaries of plaintiff road district and the City of Gladstone, a city of the fourth class, coincide. Plaintiff road district has no rural area. It follows that plaintiff is not entitled to a declaratory judgment that Sections 233.095 and 233.100 are not applicable to expenditures of special road district funds on city roads and streets or a judgment that defendants are required to pay plaintiff four-fifths of the road and bridge taxes et cetera, as prayed by plaintiff.

The judgment is reversed and the cause is remanded with directions to enter judgment in conformity hereto. *Barrett* and *Stockard, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.