**Carl BURROWS et al., Remonstrators-Appellants,**

v.

**COUNTY COURT OF CARTER COUNTY, Missouri, S. W. Protsman et al., Petitioners-Respondents.**

No. 7638.

Springfield Court of Appeals.

Missouri.

Dec. 2, 1957.

Wangelin & Friedewald, Poplar Bluff, for remonstrators-appellants.

J. Ben Searcy, Eminence, Hogan & Hogan, West Plains, of counsel, for petitioners-respondents.

STONE, Presiding Judge.

■ This is an appeal by forty-seven remonstrators from the judgment of the circuit court affirming an order of the County Court of Carter County dated August 6, 1956, purporting to vacate a short segment of a county road about 15 miles southwest of Van Buren, because such vacated segment "is useless, and the repairing of the same an unreasonable burden upon the district through which it runs and upon Carter County." See Section 228.110(1). (All statutory references herein are to RSMo 1949, V.A.M.S.) Nineteen petitioners for vacation are the real parties respondent. Although the "County Court of Carter County" is named as a respondent, the county as such is not a party to the action. Under these circumstances, we have appellate jurisdiction. State ex rel. Town of Olivette v. American Telephone & Telegraph Co., Mo., 273 S.W.2d 286, 289(6).

In a prior proceeding to vacate the same segment of road, the County Court of Carter County entered an order of vacation dated February 6, 1956; but, on appeal, the circuit court properly declared that said order was void for failure to comply with the mandatory requirement of Section 228.-070 (re-enacted Laws of 1953, p. 667) that the proposed vacation be "examined and approved by the county highway engineer." Morris v. Karr, 342 Mo. 179, 114 S.W.2d 962, 963; Tummons v. Stokes, Mo.App., 274 S.W. 528, 529(2), certiorari quashed State ex rel. Tummons v. Cox, 313 Mo. 672, 680,

282 S.W. 694, 695–696(5). Although the present proceeding to vacate was instituted on June 21, 1956, less than one year after entry of the first order of vacation on February 6, 1956, we here assume (*without, however, so determining*) that, as petitioners-respondents insist, the second petition to vacate was not within the prohibition of Section 228.130 because the county court had no jurisdiction to enter the first order of vacation and such order "was wholly void."

■ Since a county court is now an administrative body [Kansas City v. Rooney (banc), 363 Mo. 902, 903, 254 S.W.2d 626, 627] and since Section 228.120(2) expressly provides that any order vacating a public road "shall be subject to judicial review to the same extent and in the manner prescribed by chapter 536" dealing with "Administrative Procedure and Review," the scope of judicial review in the instant case is that provided by Section 22, Article V, Mo.Const. of 1945, as implemented by Section 536.140 (amended Laws of 1953, p. 680). In re Weston Benefit Assessment Special Road Dist. of Platte Co., Mo.App., 294 S.W.2d 353, 356; State ex rel. Weston, etc., v. Maughmer, Mo.App., 275 S.W.2d 385. Although we may not substitute our own judgment on the evidence for that of the county court, we are authorized to determine whether that body reasonably could have made its findings and reached its result upon consideration of all of the evidence before it, and to set aside the order of vacation if we find it to be clearly contrary to the overwhelming weight of the evidence. Kansas City v. Rooney, supra, 363 Mo. loc. cit. 904, 254 S.W.2d loc. cit. 628; State ex rel. Bond v. Simmons, Mo. App., 299 S.W.2d 540, 542(3), and cases there collected. Remonstrators' primary complaints being that the order of vacation "is unsupported by competent and substantial evidence upon the whole record" and "is arbitrary, capricious or unreasonable" [Section 536.140(2), as amended Laws of 1953, p. 680], a review of the evidence pre-

sented to the county court becomes necessary.

To facilitate an understanding of the factual situation, we reproduce marginally[1] a rough sketch to which frequent references will be made. The segment of road vacated by order of the county court (hereinafter referred to as the vacated segment) lies between points E and F on the sketch, is about .35 mile in length, and terminates on the south at the Carter County-Ripley County line. This vacated segment constitutes a relatively minor portion of a county road (hereinafter referred to as the valley road), which is about 2.25 miles in length, runs in a general northwesterly-southeasterly direction roughly parallel with and north of Big Barren Creek, and extends (between points A and B on the sketch) from farm-to-market Route "C" to a "CCC" forestry service road. With the vacated segment pinched out, the valley road would be cut into two cul-de-sacs or dead-end segments, with the northwesterly cul-de-sac (between points A and E on the sketch) about 1.3 miles in length and the southeasterly cul-de-sac (between points F and B) about .6 mile in length. The Big Barren church, "an organized church meeting * regularly," and a cemetery are near the lower or southeasterly end of the valley road (at point B on the sketch). If the valley road were closed to through traffic, the only course for vehicular travel between points A and B on the sketch (hereinafter referred to as the ridge road) would be over Route "C" between points A and D and over the "CCC" road between points D and B, an aggregate distance of 4.2 miles or about 1.95 miles farther than the 2.25

A to B – Valley road, 2.25 mi. long
A to D – Route "C", 1.70 mi. long
D to B – "CCC" forestry service road, 2.50 mi. long
A to E – 1.30 miles
E to F – Vacated segment, .35 mi. long
F to B – .60 mile
  B – Big Barren church and cemetery
  G – Low water bridge on Route "C"

miles between points A and B over the valley road.

The only witnesses testifying on the merits in support of the proposed vacation were three petitioners, S. W. Protsman, M. L. Protsman and Paul Heavin, who own the tracts through which the vacated segment runs. On direct examination, S. W. Protsman testified that he sought vacation because "it is a wore out road and never much travel, not much travel on it, and it is a detriment to our farms and our property, and every time (Big Barren) creek gets up to amount to anything, it washes out all the fences." On cross-examination, the same witness said that the water "takes the fence out all the way down that road when it gets up big," later disclosed that the fence was washed out "six or seven years ago the last time," and finally complained that "I don't want to be bothered with the fence washing out, and I want my water there, and we got water there, if we could get to it." Although this witness asserted that the vacated segment "cannot be repaired to make a good road out of it with any reasonable amount of money," he volunteered that the valley road "has been there for forty odd years that I know of, and I never have saw anybody do a lick of work on it, on this road—I know there has never been a dollar spent on it by anybody"; and, he readily conceded that "people have been traveling it and are still traveling it."

M. L. Protsman, a son of S. W. Protsman, similarly testified that the valley road has "been there a long time"—"twenty-five years I guess, maybe longer," and that no money had been spent on the road. When asked whether he thought that the valley road was "useless," his illuminating answer was, "I wouldn't say it is useless at the present time; there is times of the year that it is impassable; you can get up and down there now, and they travel it some." Paul Heavin frankly stated his personal interest in the proposed vacation because "it will save me a lot of fence when the creek gets up; it will also give me the use of some land that I have there that I can't use as it is."

The county court also had before it a written report by Vernon Wilkins, as "Carter County Highway Engineer." The precise date of Wilkins' purported appointment and qualification is not clear. Both his "Oath of Office" and his "Official Bond" show that he was appointed on June 4, 1956, and the bond further recites that Wilkins "has been duly commissioned" and bears written approval "by the Carter County Court this 4th day of June, 1956," the day on which the appeal from the *first* order of vacation (declared void for failure to comply with the statutory requirement of examination and approval by the county highway engineer) was argued and submitted in the circuit court. But, the bond approved on June 4, 1956, was dated June 5, 1956, and the oath reciting Wilkins' appointment on June 4, 1956, was acknowledged before the county clerk on June 5, 1956. To compound the confusion, the county clerk read a record entry dated July 2, 1956, that "the (county) court appoints Vernon Wilkins as County Engineer to inspect a road as petitioned to be vacated by S. W. Protsman, L. M. Protsman and Paul Heavin," and then testified that Wilkins had filed his bond "on the day he made this inspection."

However, *petitioners'* evidence definitely established that Wilkins lives in, and is county surveyor of, *Shannon* County; that, on a date not fixed in the record, petitioner S. W. Protsman, accompanied by the presiding judge of the County Court of Carter County, "went up to Shannon County to get Mr. Wilkins"; that, regardless of the date of its filing, Wilkins' bond was signed by petitioners, S. W. Protsman and M. L. Protsman, as securities; and that, when Wilkins made "his inspection," Protsman "took him over the road" and "paid him the mileage." When asked whether the presiding judge "came along" on that trip, Protsman's memory failed him. Incubated in these strange and curious circumstances, Wilkins' report contained the enigmatic

statement that "approximately one mile of (the valley) road could not be maintained on a profitable basis," recognized that traffic "will have to travel approximately two miles farther on (the ridge road) than on the valley road," and closed with "my opinion that you could make better time going around the (ridge road); it is all weather road; it is my opinion that you could not keep a road in the valley, in the time of high water you could not travel the valley road at all." Wilkins, himself, did not testify at the hearing.

But, the transcript indisputably shows that there is a low water bridge (at point G on the sketch) where Route "C" crosses Big Barren Creek, with a "caution sign" on each side of the creek bearing the warning "not passable during high water," and with "regular high water markers, a gauge put there at each foot, one foot to four foot." And, although the record does not reflect the normal or usual depth of Big Barren Creek at any point nor the rise required to make either the vacated segment of the valley road or the low water bridge on Route "C" impassable, it is demonstrated adequately and convincingly that, in times of high water, both the valley road and Route "C" become impassable.

On behalf of remonstrators, seven witnesses testified, namely, (a) W. O. Partney, the County Surveyor of Carter County for "some ten years" prior to the hearing, and by appointment County Highway Engineer for about eighteen months prior to August, 1955, when his term expired and he was not reappointed, (b) witnesses Burrows and Donley, who reside on the northwesterly segment of the valley road (between points A and E on the sketch), (c) witness Callison, a school bus driver, (d) witnesses Buffington and Stevens, farmers and saw mill operators in Ripley County, and (e) witness Pigg, whose undenied testimony was that, after the *first* order of vacation had been declared void, the presiding judge of the County Court of Carter County had said "it was the best try or something, but this time they was going to get it up right

and close it." Without detailing remonstrators' evidence, it will suffice to say that it confirmed petitioners' admissions that the valley road was being traveled by the public, and that it emphasized the convenience and utility of the valley road, particularly for usage by trucks, because that road is a "water-level" route up the valley with "practically no grade" on it while the ridge road is "over the mountain," has steep grades on it, and becomes difficult to traverse (and sometimes impassable) when there is snow and ice on the hills. As witnesses Buffington and Stevens, the saw mill operators who use the valley road "every day practically" pointed out, it is cheaper and easier on trucks to use that road since, in Buffington's language, "you can idle up (the valley road) in second with seventy ties on the truck, and you have got to go to big low to get up" the hill on the ridge road.

A county court in this state may vacate an established public road (or part thereof) only if it is "useless, and the repairing of the same an unreasonable burden upon the district or districts." Section 228.110(1); Witte v. Sorrell, Mo., 219 S.W. 595, 596(2). Of course, the term "useless," as employed in the statute, should not be given an arbitrary and absurd interpretation, and the uselessness contemplated and required to permit vacation must be a practical, not an absolute, uselessness. Consult In re Trask, 45 Misc. 244, 92 N.Y.S. 156, 157–158(3); In re Howland, 58 Misc. 124, 108 N.Y.S. 1122, 1123. But, "useless" is not here synonymous with "unnecessary" or "unrequired" [In re Coe, 19 Misc. 549, 44 N.Y.S. 910, 912(4)], and we perceive no reason why it should not be accorded its usual, ordinary and accepted meaning, i. e., "having, or being of, no use; unserviceable; producing no good end; answering no desired purpose." Webster's New International Dictionary (2nd Ed.), p. 2807. See also Application of Baldwin, 218 Minn. 11, 15 N.W.2d 184, 187(4). It is said generally that whether a public road should be vacated usually depends upon

whether it is of public utility [Elliott on Roads and Streets (4th Ed.), Vol. 1, § 460, loc. cit. 522; Ibid., Vol. 2, § 1186, p. 1689], and our Supreme Court has indicated that a finding of the ground for vacation required under Section 228.110(1) is, in effect, a finding "of no public utility." Witte v. Sorrell, supra, 219 S.W. loc. cit. 596.

▇▇▇ In the instant case, petitioner, S. W. Protsman, quickly agreed with his counsel that the vacated segment is "useless" (although, as we have noted, this witness' son "wouldn't say it is useless at the present time"), and both petitioner Protsman and petitioner Heavin readily opined that "the repairing of the same (constituted) an unreasonable burden upon the district" and Carter County. However, these expressions of opinion on the ultimate issue for determination were dependent upon, and in any event were entitled to no greater weight than, the facts on which they were predicated [32 C.J.S. Evidence § 569, b, loc. cit. 395–396; Nichols v. State Social Security Commission, 349 Mo. 1148, 1153, 164 S.W.2d 278, 280(5); Johnson v. Southern Ry. Co., 351 Mo. 1110, 175 S.W.2d 802, 806(3)], and certainly such opinions had no probative value where the factual evidence given by the same witnesses affirmatively established the contrary. Consult Hook v. Chicago & A. R. Co., 133 Mo. 313, 321, 34 S.W. 549, 551; State ex rel. Kansas City Power & Light Co. v. Gauld, 360 Mo. 795, 805, 230 S.W.2d 850, 855(4). Compare Key v. Kilburn, Mo., 228 S.W.2d 731, 737(6); Platt v. Platt, 343 Mo. 745, 750, 123 S.W.2d 54, 56(6). *Petitioners'* evidence showed, and *remonstrators'* evidence confirmed, a continuous and continuing public use of the valley road; and, in the solvent of *petitioners'* testimony that "for forty odd years * * * there has never been a dollar spent on it by anybody" and the absence of even a suggestion that "repairing" of the valley road had been requested or was contemplated, the "unreasonable burden upon the district through which it runs and upon Carter County"

dissolves in the thin air out of which it was conjured.

▇▇▇ The findings of an administrative body are arbitrary and unreasonable, where not based on substantial evidence [Ellis v. State Department of Public Health & Welfare, 365 Mo. 614, 618, 285 S.W.2d 634, 637(2); Howlett v. State Social Security Commission, 347 Mo. 784, 789, 149 S.W.2d 806, 810], that is, "evidence which, if true, has probative force upon the issues, i. e., evidence favoring facts which are such that reasonable men may differ as to whether it establishes them; * * evidence from which the trier or triers of the fact reasonably could find the issues in harmony therewith; * * evidence of a character sufficiently substantial to warrant the trier of facts in finding from it the facts, to establish which the evidence was introduced." Collins v. Division of Welfare, 364 Mo. 1032, 1037, 270 S.W.2d 817, 820(6). See also Davis v. State Department of Public Health & Welfare, Mo.App., 274 S.W.2d 615, 617(6), and cases there collected. The transcript before us contains no such evidence to support the county court's finding of the statutory ground of vacation [Section 228.110(1)], in effect a finding "of no public utility." Witte v. Sorrell, supra [219 S.W. 596].

▇▇▇ From their own evidence, it is plain, as a matter of law, that petitioners are not entitled to an order and decree of vacation, and that, therefore, no useful purpose would be served by further proceedings in the county court. See May v. Ozark Central Telephone Co., Mo.App., 272 S.W. 2d 845, 849(9). Accordingly, the judgment of the circuit court is set aside and the cause is remanded with directions to the circuit court to enter judgment setting aside the order and decree of the County Court of Carter County dated August 6, 1956, and remanding the case to said County Court with directions to enter an order and decree denying the petition for vacation.

McDOWELL and RUARK, JJ., concur.