Wilma ROSS et al.,
Petitioners-Respondents,

v.

CONCO QUARRY, INC., and Graystone
Quarry Company,
Defendants-Appellants,

and

George W. Reed and J. Dan Woodall, as
Judges of the Greene County
Court, Defendants.

No. 9754.

Missouri Court of Appeals,
Springfield District.

Nov. 3, 1976.

W. Ray Daniel, B. H. Clampett, Daniel, Clampett, Ellis, Rittershouse & Dalton, Springfield, for defendants-appellants.

John R. Lewis, Bruce K. Kirby, Kirby, Lewis, Cohick & Franks, Springfield, for petitioners-respondents.

Before STONE, P. J., and HOGAN and TITUS, JJ.

HOGAN, Judge.

By order dated June 5, 1973, the County Court of Greene County vacated a segment of a public road referred to here as Old Melville or Graystone Road. A hearing was held, but no stenographic record of the hearing was made. Upon petition for review filed pursuant to Rule 100 (Chapter 536, RSMo1969, V.A.M.S.)[1] the Circuit Court of Greene County, over the appellants' objection that the court had no jurisdiction, remanded the cause for the preparation of a record. See *In re Village of Lone Jack,* 419 S.W.2d 87, 90[3] (Mo. banc 1967). Thereafter on December 11, 1973, the county court heard evidence, received exhibits and on January 16, 1974, again

1. All references to statutes and rules are to RSMo1969, V.A.M.S., and V.A.M.R., except where otherwise noted.

vacated the same part of the same road. On January 25 the remonstrants filed a notice of appeal in the circuit court, purportedly in compliance with § 49.230, and on January 28 filed a petition for review of the second order of vacation. The circuit court set aside the second order of vacation on the ground that it was not supported by competent and substantial evidence on the whole record. Conco and Graystone Quarries, which were permitted to intervene in the first circuit court proceeding pursuant to Rule 100.04(c), now appeal from the judgment setting aside the second order of vacation.

The appeal has been meticulously briefed and argued in this court on two points. The first point made by appellants presents a question of statutory construction. Summarized, the appellants' principal contention is that because the respondents did not file the notice of appeal required by § 49.-230 following the first order of vacation and because compliance with § 49.230 was mandatory and jurisdictional, therefore: 1) all acts and events subsequent to the first order of vacation, i.e., the remand to the county court, the second hearing, the second order of vacation, the second review proceeding and the review itself were nullities, and in consequence, 2) the first order of vacation is a valid and subsisting order in all respects, and the circuit court erred in purporting to exercise jurisdiction over the subject matter. Respondents counter with several arguments. They say that neither § 49.230 nor Rule 100.04 (§ 536.110) provides an exclusive method for review of a valid administrative order, and further argue that the circuit court always has jurisdiction to review and remand a void order. The respondents further maintain that absolute compliance with § 49.230 was not mandatory because § 228.120(2) provides the specific procedure to be used in seeking review of an order vacating a public road pursuant to § 228.110.

■ A preliminary word about the first order of vacation and the first review proceeding in the circuit court seems appropriate. The county court's record shows on its face that the court issued its first order without obtaining a report from the county highway engineer, as required by § 228.070. Therefore, the first order was absolutely void. *Morris v. Karr,* 342 Mo. 179, 183–184, 114 S.W.2d 962, 964–965[3][4] (1938); *Burrows v. County Court of Carter County,* 308 S.W.2d 299, 301[1] (Mo.App.1957); *Tummons v. Stokes,* 274 S.W. 528, 529[2] (Mo. App.1925), cert. quashed, *State ex rel. Tummons v. Cox,* 313 Mo. 672, 680, 282 S.W. 694, 695–696[5] (banc 1926). Whether one considers § 49.230 or § 228.120(2) as prescribing the proper or exclusive method of procedure, the circuit court's jurisdiction was appellate, not original jurisdiction. § 478.-070(4); and see *State ex rel. Board of Registration for the Healing Arts v. Elliott,* 387 S.W.2d 489, 492–493[2, 3] (Mo. banc 1965). In this state, appellate courts acquire no jurisdiction on appeal from a void order except jurisdiction to determine the invalidity of the order or judgment appealed from and dismiss the appeal. *Kansas City Sanitary Co. v. Laclede County,* 307 Mo. 10, 14–15, 269 S.W. 395, 397[2][3] (banc 1925); *In re Moore's Estate,* 354 Mo. 240, 249, 189 S.W.2d 229, 234–235[6] (1945); *Morris v. Karr, supra,* 342 Mo. at 184, 114 S.W.2d at 965[4]. Inasmuch as the county court's first order was void on its face, the circuit court might properly have dismissed the appeal or petition for review of the first order, but it could do no more. The circuit court did not dismiss the petition for review; it expressly and in terms assumed jurisdiction and remanded the case, which was in itself an exercise of appellate judicial authority. See *Durwood v. Dubinsky,* 361 S.W.2d 779, 783[1] (Mo.1962). We therefore conclude that to the time the county court commenced the hearing which led to the second order of vacation the whole proceeding was a nullity.

■ Nevertheless, it was not necessary to begin completely anew. We grant that a court of general jurisdiction, having exhausted its adjudicative function and having entered a final judgment, cannot thereafter vacate the first judgment by entering another. *State ex rel. Berbiglia v. Randall,*

423 S.W.2d 765, 769[5] (Mo. banc 1968). In this case, however, the county court had never validly exercised its authority up to the time the second hearing was begun. Its action in resuming the hearing, receiving further evidence and entering a new order undoubtedly had the effect of vacating and abrogating the first, void order, *St. Louis County v. Menke,* 95 S.W.2d 818, 820 (Mo. App.1936), and in our view the county court was at liberty to consider the petition for vacation as if the first, void order had never been entered. The record clearly shows that the respondents did not comply with the requirements of § 49.230 after the second order of vacation was entered and therefore the procedural question remains the same: Does § 49.230 prescribe the mandatory and exclusive procedure to be followed in seeking review of an order of a county court vacating a public road? If so, it may be granted that strict compliance with the prescribed procedure is mandatory and jurisdictional. *Brogoto v. Wiggins,* 458 S.W.2d 317, 318–319[2, 3] (Mo.1970); *American Hog Co. v. County of Clinton,* 495 S.W.2d 123, 127[7] (Mo.App.1973); *In re City of Duquesne,* 313 S.W.2d 65, 69[6] (Mo. App.1958).

For a number of reasons, we do not believe § 49.230 was legislatively intended to provide such an exclusive procedure. Section 49.230 was enacted by the 70th General Assembly in 1959, Laws of Mo.1959, S.B. 65, pp. 4–5. In material part, it reads (emphasis supplied):

"Appeals from the decisions, findings and orders of county courts of a quasi-judicial nature *affecting private rights* shall be made within ten days from the date of the decision, findings or order by filing notice of appeal with the county court. . . . The circuit court shall proceed to hear and determine the case in the manner provided by section 536.140, RSMo. Appeal from the decision on review may be taken by the county court or other *aggrieved party as in civil cases.*"

Perhaps it can be said that an order of a county court vacating a public road, or part of a public road, is a quasi-judicial order. *Duenke v. St. Louis County,* 358 Mo. 91, 98, 213 S.W.2d 492, 496[6] (1948); *Kelley v. Waymeyer,* 356 Mo. 1043, 1046, 204 S.W.2d 744, 745[1] (1947). But while we are conversant with the authorities which give the phrase "private right" a broad definition in the context of administrative rulings, e. g., *State ex rel. State Highway Commission v. Weinstein,* 322 S.W.2d 778, 783[2–4] (Mo. banc 1959); *Smith v. Missouri State Highway Commission,* 488 S.W.2d 230, 234–235 (Mo.App.1972), we do not believe the order of vacation affected the quarries' "private rights". One of the appellants' principal concerns here is their expenditure in repairing parts of the road damaged by their heavy equipment. According to Mr. Innes, employed by Graystone, the quarries use the segment of the road involved in their commercial operations. Heavy vehicles used by the quarries and their customers cause damage to the road, and the quarries have spent more than $10,000 repairing that damage in the 15 years preceding the county court's second hearing. Mr. Innes testified that the appellants "have seal-coated the road numerous times, we have repaired pot holes, we call them . . . we have resurfaced at least a quarter mile of the road and [have made] other numerous repairs." At one point during the hearing the appellants offered to construct a sort of alternate route, at their expense, to replace the section of road to be vacated. We are in no doubt that the cost of repairing and maintaining the road is a matter of legitimate, even pressing concern to the quarries, and we do not suggest that an order of vacation would be invalid merely because it operated to their benefit; we do suggest that the damage suffered by the appellants because of the existence of the road differs from that suffered by the public only as a matter of degree, and that their voluntary expenditure gives them no "private right" to have the road vacated.[2]

---

2. Cf. *Howe v. Callaway,* 119 Mo.App. 251, 258–260, 95 S.W. 974, 976 (1906), and see *Stahl*

*Soap Corp. v. City of New York,* 5 N.Y.2d 200, 182 N.Y.S.2d 808, 156 N.E.2d 443, 445[4]

We do not, however, place our decision on the ground that no "private rights" were affected, although we believe that to be the case. In our view, the basic fallacy of the appellants' position appears upon consideration of the history and language of § 228.120(2), with which the respondents fully complied. Present § 228.120(2) was enacted by the General Assembly in 1949, Laws of Mo.1949, p. 553, and in its original form read (our emphasis):

"Section 8477.

3. *Any* order of the county court establishing or vacating a public road shall be subject to judicial review *to the same extent and in the manner prescribed* by an act of the 63rd general assembly found at Laws of Missouri, 1945, page 1054, approved March 20, 1946."

 The last sentence of the act refers to the original Administrative Procedure and Review Act, later codified as Chapter 536, RSMo 1949, and the statute, as codified, reads "in the manner prescribed by chapter 536, RSMo 1949." In our opinion, it is this statute, § 228.120(2), not § 49.230, which prescribes the procedure to be followed in obtaining review of an order of a county court vacating a public road. Following the principle that statutes must be construed by considering their manifest purpose, historically considered, as well as the language used, *Gladstone Special Road Dist. v. County Court of Clay County,* 365 Mo. 1097, 1103, 293 S.W.2d 351, 355[4] (1956); *Union Electric Co. v. Morris,* 359 Mo. 564, 569, 222 S.W.2d 767, 770[2] (1949); and see 2A Sutherland, Statutory Construction, § 45.10, pp. 32–33 (4th ed. 1973), we conclude that between 1872 and 1921 the General Assembly, albeit by fits and starts, developed a complete and exclusive procedure for taking appeals from orders of the county court establishing or vacating public

roads which was not expressly or impliedly repealed by the enactment of § 49.230 in 1959.

Statutes dealing with the establishment, vacation and alteration of public roads by county courts have been in existence at least since 1835,[3] and the provisions of the "road law", i. e., those statutes dealing with the establishment, vacation or change of a public road have been regarded as distinct and discrete even when encoded with other statutes. *State ex rel. United Rys. Co. of St. Louis v. Wiethaupt,* 238 Mo. 155, 167, 142 S.W. 323, 325 (banc 1911).

Appeals from orders establishing or vacating public roads were allowed beginning in 1872, Laws of Mo.1872, p. 139, §§ 50 and 71, but the right of appeal was limited; an appeal would lie from an order opening, changing or vacating a public road, but not from an order refusing to do so. *State ex rel. United Rys. Co. of St. Louis v. Wiethaupt,* supra, 238 Mo. at 166, 142 S.W. at 325; *Aldridge v. Spears,* 101 Mo. 400, 405, 14 S.W. 118, 119 (1890). Moreover, the 1877 and 1887 revisions of the road law omitted any equivalent of § 50 of the Laws of 1872, which had provided a procedure for appeal in road law cases, so that in 1908, the *right* to appeal was limited and the procedure for taking an appeal was governed by the general statute regulating appeals from county and probate courts. *Sidwell v. Jett,* 213 Mo. 601, 608–609, 112 S.W. 56, 58[3] (1908).

In 1909 a comprehensive revision of the road law was undertaken. Laws of Mo. 1909, p. 727. The right to appeal was extended to either party, petitioner or remonstrant, and an incomplete appeal procedure was established. Laws of Mo.1909 at 731–732, codified as § 10440, RSMo 1909. Nevertheless, the appeals provisions were not yet complete, because § 10440, RSMo 1909, provided no method for taking an

---

(1959); *City of Stillwater v. Lovell,* 159 Okl. 214, 15 P.2d 12, 16[1, 2] (1932); *City of Rock Hill v. Cothran,* 209 S.C. 357, 40 S.E.2d 239, 243[3] (1946); 39 Am.Jur.2d Highways, Streets, and Bridges § 145, at 518 (1968).

**3.** RSMo 1835, p. 544, § 24, read: "Any twelve householders of a township or townships, may

make application to the county court, by petition signed by them, for the vacation of any road or highway as useless, and the repairing thereof an unreasonable burthen . . . ." There was no statutory appeal. Section 27 provided that "[t]he judgment of the court shall be conclusive in the premises."

appeal and no specific means of transferring an appeal to the circuit court. Our Supreme Court therefore held that § 10440 merely limited the general right of appeal conferred by § 4091, RSMo 1909. *Clark v. Kilbride,* 282 Mo. 101, 106, 220 S.W. 880, 881[2] (1921).

In 1917, the road law was once again revised. Laws of Mo.1917, p. 442. A specific procedure was established for taking appeals from orders of a county court *establishing* a public road, Laws of Mo.1917 at 448, codified as § 10629, RSMo 1919, but the 1917 revisions made no specific provisions for appeal from an order *vacating* a public road. However, in 1921, Laws of Mo.1921, pp. 594–595, the General Assembly reestablished the right of appeal from an order vacating a public road as part of the road law. In terms, and as material here, the act of 1921 provided (our emphasis):

"In all cases wherein it is sought to vacate a public road for any purpose by petition as now provided by law, *there shall exist the right of appeal* from the ordering [sic] and judgment so vacating any public road, from the county court to the circuit court *by any party in interest in common as remonstrators, or as an individual affected thereby in any manner,* by adopting the same procedure provided for appeals to the circuit court from a judgment of [the] county court in establishing a new road. . . .

"No notice of appeal in any road matter from [a] judgment establishing or vacating the same shall be necessary in any case."

So by 1921, the statutes providing for appeals in cases involving the establishment or vacation of public roads had progressed from an incomplete statute restricting the right of appeal to those aggrieved by affirmative action to a scheme providing a special, exclusive statutory procedure for taking appeals from orders of a county court establishing or vacating a public road. The exclusive nature of the statutory procedure set up in 1917 and 1921 was recognized by our Supreme Court in *Reynolds v. Potts,*

305 Mo. 1, 264 S.W. 663 (1924). In that case appellants sought to appeal from an order of the Lincoln County Court establishing a public road under two general statutes, then §§ 2436 and 2584, RSMo 1919, governing appeals from the judgments and orders of a county court. Our Supreme Court noted that the statutes regulating appeals in public road cases had not been complied with, and held, 305 Mo. at 6–7, 264 S.W. at 664, that the statutory procedure for removal of a public road case from the county court to the circuit court necessarily excluded the application of any other method of transfer of the case to the circuit court. The court continued, 305 Mo. at 7, 264 S.W. at 664 (our emphasis):

"Even under a section less restrictive in terms this court held that the road law, in the matter of opening and vacating public roads, '*makes its own provisions in respect of appeals and allows them in specified cases.* The clear and necessary inference is that appeals are denied from all other orders in these road matters.'"

The statutory appeals procedure completed by the enactment of S.B. 107 in 1921, Laws of Mo.1921, pp. 594–595, was carried through the 1929 and 1939 revisions without change.[4] In 1936, this court recognized the exclusivity of the appeals provisions of the road law in *Wilson v. Wynn,* 94 S.W.2d 961, 965[2] (Mo.App.1936). So, it may be seen that during the 28 years preceding the enactment of present § 228.120(2) the legislative history of the statutes and the case law indicate that the appeals provisions were intended to be complete and exclusive. A further question, then, is whether the enactment of § 228.120(2) indicated any change in legislative intent.

As indicated, § 228.120(2) was enacted in 1949. The act of which § 228.120(2) was a part, Laws of Mo.1949, p. 551, repealed several sections of the road law and enacted new statutes in lieu thereof. Sections 8475–8478, 8483 and 8484, RSMo 1939, were repealed and replaced by nine new sections dealing with the same subject matter, later

---

4. As §§ 7831 and 7837, RSMo 1929, and §§ 8477 and 8483, RSMo 1939.

codified as §§ 228.040–228.100, 228.120 and 228.130. The effect of the 1949 act was to split § 8475, RSMo 1939, into six new sections (§§ 228.040–228.090) which are virtually identical to § 8475, RSMo 1939. The two most important changes made by the 1949 act were changes in the provisions for condemnation and the provisions for appellate review of orders establishing or vacating a public road. The act eliminated detailed provisions for condemnation proceedings by enacting a new section, now § 228.-100, referring to the chapter on that subject. See revisor's historical note to § 228.-040, and see *County of Greene v. Hammons,* 389 S.W.2d 843, 846 (Mo.1965). Also eliminated, as noted, were the detailed provisions for review.

These changes in the condemnation and judicial review provisions were made because the constitution of 1945, unlike the constitution of 1875, divested county courts of their judicial function. *County of Greene v. Hammons,* supra, 389 S.W.2d at 845; *Rippeto v. Thompson,* 358 Mo. 721, 726, 216 S.W.2d 505, 508[5] (1949). We believe, as the court did in *County of Greene v. Hammons,* supra, 389 S.W.2d at 846, that the General Assembly's intent is persuasively indicated by the emergency clause which appears in Laws of Mo.1949, p. 554, § 2:

"Whereas the adoption of the Constitution of 1945 has placed a grave doubt upon the constitutionality of the present statutory procedure relating to the establishment and vacation of public roads, and because the establishment and vacation of such roads are of vital importance to the citizens of this state, this act is necessary for the immediate preservation of the public peace, health, and safety . . . ."

In amending the appeals provisions, the General Assembly must be presumed to have been familiar with the construction placed upon the former act and the new statute must be construed in light of the defect it sought to remedy and of the usages, circumstances and conditions existing at the time the change was made. *Darrah v. Foster,* 355 S.W.2d 24, 31[12] (Mo.

1962). Given the express declaration of purpose made by the General Assembly, and its presumed knowledge that the appeals sections of the road law had for 25 years been held mandatory and exclusive, we cannot hold that the General Assembly intended anything more than to alter the appeals or review provisions of the road law so as to bring them into compliance with Mo.Const. Art. V, § 22.

We reject appellants' contention that the General Assembly intended to apply only the "scope of review" provision of Rule 100.07 (§ 536.140). As heretofore indicated, the language of § 228.120(2) must be considered in determining legislative intent. Note that the statute expressly refers to *any* order, and to *chapter* 536 and not merely to one section in that chapter, as does § 49.230. Some significance must be attached to the fact that § 228.120(2) provides the order shall be reviewed *to the same extent* and *in the manner* prescribed by Rule 100 (Chapter 536). We are unwilling to accept the appellants' suggestion that the language of § 228.120(2) is mere legislative pleonasm; one of the commonplace rules of statutory construction is that some significance and effect must be given every word, phrase, sentence and part thereof, if possible. *State ex rel. Wright v. Carter,* 319 S.W.2d 596, 600[6] (Mo. banc 1958); *Stewart v. Johnson,* 398 S.W.2d 850, 853[4] (Mo.1966). In our opinion the phrase "to the same extent" refers to the scope of review and the phrase "in the manner" refers to the procedure for obtaining review.

We are further of the opinion that the appellants' argument is fundamentally unsound because they would have a general statute, § 49.230, impliedly repeal a special statute, § 228.120(2), even though the two are not irreconcilably inconsistent or necessarily repugnant, and even though there is no indication of legislative intent that § 49.-230 should so operate.

Section 49.230 was enacted 10 years after § 228.120. The title of the act of which present § 49.230 is a part, Laws of Mo.1959, S.B. 65, p. 1, indicates that the act

deals generally with county courts and county buildings. The immediate precursor of § 49.230 was § 2490, RSMo 1939—§ 2584 in the 1919 revision—the very statute held inapplicable to appeals in road cases in *Reynolds v. Potts,* supra, 305 Mo. at 6–7, 264 S.W. at 664. When § 49.230 was enacted in 1959, § 228.120(2) had, by express reference, provided an explicit, detailed procedure to be followed in seeking review of orders establishing or vacating public roads. As we have noted, § 228.120(2) replaced a special and exclusive statute governing appeals in road law cases. It is familiar doctrine that when the general act is later, the existing special statute will be regarded as maintaining an exception to the terms of the general statute, unless the special statute is repealed in express words or by necessary implication. *State ex rel. City of Springfield v. Smith,* 344 Mo. 150, 154–155, 125 S.W.2d 883, 885[5–8] (banc 1939); *Tevis v. Foley,* 325 Mo. 1050, 1054, 30 S.W.2d 68, 69[3–5] (1930). Section 49.230 neither expressly nor by necessary implication repeals § 228.120(2), and we hold that appeals from orders of a county court vacating a public road are governed by § 228.120(2). The respondents' application for review was timely filed January 28, 1974, and the circuit court acquired jurisdiction of the second vacation proceeding. We find it unnecessary to decide whether there could conceivably be a case in which §§ 49.230 and 228.120(2) might reasonably be construed as providing alternate methods of seeking review.

The merits of the action require less discussion than the jurisdictional question. The circuit court set the county court's order aside on the ground that the order was not supported by competent and substantial evidence upon the whole record. We must agree. Section 228.110 authorizes a county court to vacate a public road or part of a public road upon finding that the road or part thereof is "useless, and the repairing of the same an unreasonable burden upon the district or districts." Factually, this case is similar in many respects to *Burrows v. County Court of Carter County,* supra, 308 S.W.2d 299, decided by this court in

1957. As the court then carefully pointed out, 308 S.W.2d at 304–305:

"Of course, the term 'useless,' as employed in the statute, should not be given an arbitrary and absurd interpretation, and the uselessness contemplated and required to permit vacation must be a practical, not an absolute, uselessness. Consult *In re Trask,* 45 Misc. 244, 92 N.Y.S. 156, 157–158(3); *In re Howland,* 58 Misc. 124, 108 N.Y.S. 1122, 1123. But, 'useless' is not here synonymous with 'unnecessary' or 'unrequired' [*In re Coe,* 19 Misc. 549, 44 N.Y.S. 910, 912(4)], and we perceive no reason why it should not be accorded its usual, ordinary and accepted meaning, i. e., 'having, or being of, no use; unserviceable; producing no good end; answering no desired purpose.' Webster's New International Dictionary (2nd Ed.), p. 2807. See also *Application of Baldwin,* 218 Minn. 11, 15 N.W.2d 184, 187(4). It is said generally that whether a public road should be vacated usually depends upon whether it is of public utility . . . and our Supreme Court has indicated that a finding of the ground for vacation . . . is, in effect, a finding 'of no public utility.'"

The evidence, very briefly summarized, shows that another route would be available to the members of the public who use the vacated segment of road, but the petitioners' evidence in itself shows that the road was being used a good deal at the time the county court held its second hearing. A traffic count made at various times by a registered engineer indicated that between 6:00 a. m. and midnight on November 2, 1973, 396 vehicles used the vacated segment of road; on November 3, 168 vehicles were counted. On Sunday, November 4, 68 vehicles used the road; on Saturday, December 1, 99 vehicles were counted and on Sunday, 67 vehicles used the road. The petitioners had evidence from the county highway engineer which indicates that the quarries operate on both sides of the road, and that their use of heavy equipment damages the roadbed. This witness testified on cross-examination that he had made no study as to

how long the road had been in existence, had made no traffic count, and had no knowledge of the cost of maintenance, which was being borne by the quarries rather than Greene County or a road district. One of the appellants' employees, Mr. Innes, testified as we have indicated: the quarries have spent more than $10,000 maintaining the road over a fifteen-year period, but the greater part of this repair has been made necessary by the quarries' use of the road in their commercial operations. As the circuit court observed in its memorandum, the petitioners' evidence disclosed: a) that the segment of road sought to be vacated is used continuously and extensively; b) nothing concerning any expenditure of *public* funds on the segment of road which was vacated. The remonstrants' evidence was all to the effect that usual, everyday use of the road was being made by residents of Greene County every day, and that closing the road would be a serious inconvenience to the traveling public.

The county court seems to have based its decision in some measure upon a finding that travel over the vacated segment of the road is dangerous. Perhaps it is, and we are in no doubt of the county court's good faith in ordering the vacation. We must agree, however, that the two statutory conditions, i. e., a total lack of utility and unreasonable public expenditure, are not established by the record. Accordingly, the judgment is affirmed.

All concur.