**STATE of Missouri ex rel. Chris KOSTER, Attorney General, Missouri Department of Agriculture, and Missouri State Milk Board, Plaintiffs–Respondents,**

v.

**MORNINGLAND OF THE OZARKS, LLC, d/b/a Morningland Dairy, Defendant–Appellant.**

**No. SD 31390.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 27, 2012.

Application for Transfer Denied
Oct. 18, 2012.

Appellant's Application for Transfer
Denied Dec. 18, 2012.

348

Jaired B. Hall, for Appellant.

Chris Koster, Jessica L. Blome, Laura Bailey Brown, for Respondent.

## NANCY STEFFEN RAHMEYER, J.

The State of Missouri, through the Missouri Department of Agriculture and the Missouri State Milk Board ("the Milk Board"), placed an embargo on all of the cheese produced by Morningland Dairy ("Appellant"), recalled all of Appellant's cheese, and subsequently sued to order the destruction of it. Appellant brings this appeal challenging the judgment upholding the legality of the condemnation and destruction orders. We find no error and affirm the judgment.

## FACTS

Appellant is a licensed manufacturer of cheeses produced from raw cow and goat milk. The State of Missouri regulates and licenses businesses using or producing raw milk under sections 196.520 through 196.610. On August 26, 2010, the Milk Board received a report from the State of California that two samples of Appellant's cheese "had tested positive for the bacteria *Listeria monocytogenes* [ *("L.Mono.")* ] and *Staphylococcus aureus* [ *("Staph.A.")* ]." Responding to the report, Milk Board agents entered Appellant's plant and condemned the entire inventory of cheese pending further investigation. In addition to the condemnation action, a recall was issued for all of Appellant's cheese "remaining at retail or unconsumed by ultimate purchasers." In concert with the previous actions, Appellant, drawing equally from cow and goat cheeses packaged for sale, submitted fourteen total samples for testing. All samples returned positive results for *Staph. A.*, and six of

the seven cow cheeses tested were found to contain *L. Mono.*

■ Following the test results, the Milk Board ordered the destruction of the remaining condemned cheese in writing on October 1, 2010. Appellant filed a formal objection to the order with the Milk Board on October 6, 2010. When subsequent negotiations between the Milk Board and Appellant failed, the State filed a Petition for Injunctive Relief and an Application for Preliminary Injunction on October 22, 2010, seeking court enforcement of the destruction order. On May 23, 2011, the trial court entered an Amended Judgment and Order granting the permanent injunction. The amended judgment included the court's Final Order of Permanent Injunction, issued on February 23, 2011, ordering the destruction of Appellant's cheese under the supervision of the Director of the Department of Agriculture. Appellant now appeals.

## STANDARD OF REVIEW

■ "The classification of a case as 'contested' or 'noncontested' is determined as a matter of law." *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 506 (Mo. banc 2009). The primary characteristic of a noncontested case is the absence of an opportunity to be heard in a formal procedure concerning the agency decision. *Id.* Under section 536.150(1),[1] the circuit court's review of an agency decision in a noncontested case is *de novo* and the court "hears evidence on the merits, makes a record, determines the facts and decides whether the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary,

---

1. All references to statutes are to RSMo 2000, and all rule references are to Missouri Court Rules (2012), unless otherwise specified.

capricious or otherwise involves an abuse of discretion." *Id.* at 508. Judicial review in a noncontested case is similar to a judge-tried civil case. Section 536.150; *see also, Long v. Bates County Memorial Hosp. Bd. of Directors,* 667 S.W.2d 419, 421 (Mo.App. W.D.1983). Because Appellant was not afforded a hearing before the Milk Board, this is a noncontested case.

 In a noncontested case on appeal, this Court applies the same standard of review as exercised in a case tried without a jury. *State ex rel. Crowe v. Missouri State Hwy. Patrol,* 168 S.W.3d 122, 126 (Mo.App. W.D.2005). "The trial court's judgment will be affirmed 'unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law.'" *Id.* at 126–27. "Accordingly, the appellate court reviews the circuit court's judgment to determine whether its finding that the agency decision was or was not unconstitutional, unlawful, unreasonable, arbitrary, capricious, or the product of an abuse of discretion rests on substantial evidence and correctly declares and applies the law." *Missouri Nat. Educ. Ass'n v. Missouri State Bd. of Educ.,* 34 S.W.3d 266, 275 (Mo.App. W.D. 2000). The standard requires this Court "to accept the trial judge's credibility determinations and view the evidence in the light most favorable to the judgment, while disregarding all contrary evidence and permissible inferences." *Capital Bank v. Barnes,* 277 S.W.3d 781, 782 (Mo.App. S.D. 2009).

## Point I

 Appellant's first point claims the trial court erred when it denied its motion for a more definite statement because the State's petition failed to specify (1) the date that Appellant allegedly "sold, offered or exposed for sale, or delivered" its cheese products and to whom for each date; (2) the date that the Milk Board allegedly ordered Appellant to schedule a date for the destruction of its cheese; and (3) which of Appellant's cheese was allegedly supposed to be destroyed. Rule 55.27(d) permits a party to move for "a more definite statement" alleging the challenged pleading does not sufficiently permit the moving party "properly to prepare responsive pleadings or to prepare generally for trial when a responsive pleading is not required." Rule 55.27(d). The trial court's denial of a motion for a more definite statement "will not be disturbed provided that sound legal discretion was exercised." *Glidewell v. S.C. Management, Inc.,* 923 S.W.2d 940, 952 (Mo.App. S.D. 1996).

In the present case, Appellant moved for a more definite statement specifying three portions of the State's petition requiring further clarification. The court issued an order overruling the motion on December 3, 2010. While the order indicates the matter was considered, it does not state the grounds upon which the motion was overruled. Although the docket does indicate a pretrial teleconference was held on December 3, 2010, this Court does not have the benefit of a transcript from that conference. The record does indicate the Milk Board's October 1, 2010 order directing the destruction of the cheese was before the court prior to the decision on the motion.

 Although the record contains neither the trial court's rationale behind the decision on the motion nor the transcript of the pretrial conference, there is no indication that Appellant would be unable to prepare a responsive pleading absent the requested information. As to the first allegation, that the State's petition failed to specify the date that Appellant sold, offered or exposed for sale, or delivered its

cheese, that information is uniquely in the possession of Appellant. The State ordered the destruction of all of the cheese that was in production at the dairy. It did not matter the date that the cheese was to be sold, offered or exposed for sale. It would not have assisted Appellant in preparing its defense against the charge that the cheese was adulterated by the addition of an unauthorized substance and/or foreign material to milk consisting of the pathogens *L. Mono.* and *Staph. A.* and produced in unhealthy or unsanitary surroundings or held in unclean or unsanitary containers. Appellant's first argument has no merit.

■ Appellant next argues that the date the cheese was to be destroyed was not definite enough to defend at trial. The order from the Milk Board identified products manufactured within a specific date range as being subject to the destruction order and stated a further requirement that the destruction must occur "under the supervision of the Director of the Department of Agriculture." The order further instructed that the Milk Board would "schedule a time and date for destruction ... with [Appellant] over the next three working days." The challenge by Appellant accurately points to an error in the petition in that the Milk Board's order stated the Milk Board would call to schedule a date for destruction whereas the petition alleges the order required Appellant to schedule a date for destruction. In comparing the Milk Board's October 1, 2010 order and the State's petition, the State has misstated a fact concerning the scheduling of a destruction date. But there exists a very real difference between a fact in a pleading and a fact found at trial. *See generally Brock v. Blackwood,* 143 S.W.3d 47, 56 (Mo.App. W.D.2004) (stating that "facts properly pleaded are assumed true" and a petition is sufficient if

it "alleges ultimate facts ... which plaintiff will attempt to establish at trial"). Under the Missouri rules of civil procedure, a pleading containing the necessary facts, even if mischaracterizing events, is valid where stating a claim upon which relief can be granted. Rule 55.05; *Western Cas. & Sur. Co. v. First State Bank of Bonne Terre,* 390 S.W.2d 913, 922 (Mo.App. St. L.D.1965).

Appellant filed a responsive pleading and an amended responsive pleading, both of which requested that the trial court prohibit the Milk Board's enforcement of its "October 1st destruction letter." Those pleadings indicate that Appellant certainly understood which destruction order was at issue. Furthermore, the testimony indicates that Appellant and the Milk Board communicated as to the date of the destruction of the cheese. Appellant's second argument has no validity.

■ Appellant's third argument challenges the failure to identify the cheese to be destroyed. While Missouri is a fact-pleading state, *Whipple v. Allen,* 324 S.W.3d 447, 449 (Mo.App. E.D.2010), a motion for a more definite statement inherently concedes a cause of action and a motion to dismiss is a more appropriate vehicle in contesting the sufficiency of a petition. Where the requested clarification requires information most likely known to the moving party, this Court has upheld the lower court's denial of a motion for a more definite statement. In *Glidewell,* the defendant challenged the trial court's refusal to grant a motion for a more definite statement. *Glidewell,* 923 S.W.2d at 951–52. In that case, a physician at the defendant hospital failed to correctly diagnose the plaintiff with colorectal cancer, which eventually led to the death of the plaintiff. *Id.* at 944. The trial court dismissed the defendant's motion for a more definite statement target-

ing the allegation the physician was an employee of the hospital. *Id.* at 951–52. In finding the defendant had alleged the requested information on a cross-claim against the physician, this Court determined the requisite sound legal discretion was exercised. *Id.* at 952. Furthermore, the information requested was "peculiarly within the knowledge of [the defendant]" and not something the "Plaintiff could . . . reasonably be expected to know." *Id.*

Here, the State's petition identified the cheese to be destroyed in the second count. While not explicitly identified individually or by batch numbers, the petition calls for the destruction of "cheese products that [Appellant] produced and processed during the period spanning from January 1, 2010, through August 26, 2010." Similar to *Glidewell*, Appellant is in the best possible position to accurately identify the subjects of the destruction order. As such, the trial court's decision to overrule the motion for a more definite statement is on the firm ground of "sound legal discretion." Point I is denied.

### Point II

In its second point, Appellant claims the trial court switched the burden of proof and required it to prove that the cheese was not "illegally manufactured." Prior to trial, Appellant filed a motion *in limine* requesting the court impose upon the State "the burden of proving . . . that [Appellant's] entire inventory of cheese [was] unfit for human consumption." The court set a burden of proof "by a preponderance of the evidence, that [Appellant's] cheese offended one or more of the proscriptions of § 196.545, and, to the extent applicable, that the cheese was 'offered, exposed for sale, or sold for human food purposes.'" The court did not make a direct finding that the cheese was unfit for human consumption.

The overall purpose of Missouri Dairy Laws is "to encourage orderly and sanitary production, transportation, processing and grading of manufactured milk *and its products* [.]" Section 196.527 (emphasis added). Accordingly, the intent of the Missouri Dairy Laws require reading section 196.545 to apply to both "manufacturing milk" and "any dairy products made from manufacturing milk." Section 196.545. As a case of first impression for this Court, there are no opinions directly interpreting the statute in question. It is clear that the entire statute, section 196.545, sets forth five distinct circumstances in which a finding of the "[u]nlawful sale of dairy products," including manufactured milk and products from manufactured milk, can be made. The court applied the correct burden upon the State requiring proof of Appellant's violation of the statute, the unlawful sale of dairy products, rather than proof the cheese was unfit for human consumption. Point II is denied.

### Point III

In its third point, Appellant challenges the trial court finding that the Milk Board was authorized by law to condemn the inventory of cheese absent establishment of a violation of section 196.545. The point reads: "The trial court erred as a matter of law when it ruled that a condemnation order can be issued without evidence that the condemned dairy product was illegally manufactured since RSMo. 196.570 authorizes the State to condemn a dairy product only when it has been illegally manufactured." Appellant confuses the Milk Board's authorization to order an embargo of the entire inventory of cheese on August 26, 2010, with the later condemnation order. Appellant is correct that a condemnation order cannot be issued without evidence that it was from the unlawful

sale of dairy products. Simply put, the Milk Board did not allow a condemnation of the inventory absent a violation of section 196.545; the Milk Board found a probable violation of the statute under section 196.030 to embargo the cheese and subsequently ordered the cheese condemned under section 196.545. The trial court properly upheld that condemnation order.

When probable cause exists to believe there is an immediate threat to the safety of the general public, the State's action in the absence of proof is a valid exercise of police power. *City of Kansas City v. Jordan,* 174 S.W.3d 25, 40–41 (Mo. App. W.D.2005). In *Jordan,* the city acted to cause the demolition of a privately-owned building that was suspected of creating "a danger to the public." *Id.* at 30. An external inspection of the building prior to the action had led the city to determine the building was a danger and it had begun the process of assessing the potential for restoration. *Id.* at 29. A second inspection several days later determined the building to be in "seriously worse" condition and an emergency demolition order was issued and carried out on the same day. *Id.* at 30. The initial condemnation and eventual destruction of the building all occurred without a hearing through the agency or the judiciary. *Id.* at 44.

The court found the applicable statute authorized the action and further determined the exercise of police power was valid because the statute had a " 'substantial and rational relation to the health, safety, peace, comfort and general welfare of the inhabitants of [Kansas City].' " *Id.* at 41 (quoting *City of Blue Springs v. Gregory,* 764 S.W.2d 101, 103 (Mo.App. W.D. 1988)). The court further elaborated that "[w]here public safety and welfare, as well as peace and health are involved, the sovereign may abridge, abrogate, impair, or even *destroy* property." *Id.* (emphasis in original). Finally, the controlling statutes provided the property-owner guidelines in assessing the validity of the State's action post-demolition and remedy where that action was invalid. *Id.* at 45.

Condemnation of suspected illegally manufactured food is authorized by Missouri law and is an appropriate exercise of state police power. Section 192.080 states, in part, "[a]ll powers and duties pertaining to administration of laws relating to food and drugs shall be exercised by the department of health and senior services." Section 192.080. Section 196.570 grants the Milk Board the authority "to condemn any illegal manufactured dairy product as defined in section 196.545, which is offered, exposed for sale, or sold for human food purposes, and shall identify same as an unlawful product." Section 196.570. Section 196.030 grants similar authority, stating in part,

> Whenever a *duly authorized agent of the department of health and senior services* finds or has probable cause to believe, that any food, drug, device, or cosmetic is adulterated, or so misbranded as to be dangerous or fraudulent, within the meaning of sections 196.010 to 196.120, he shall affix to such article a tag or other appropriate marking, giving notice that such article is, or is suspected of being, adulterated or misbranded and has been detained or embargoed[.]

Section 196.030 (emphasis added).

The Milk Board initially, on August 26, 2010, embargoed the entire inventory of cheese after the complaints from the State of California. Those actions of embargo were a valid exercise of police power available to the State. The record shows that the reports of Appellant's cheese contaminated with *L. Mono.* were serious enough to prompt a recall of cheese already delivered into commerce. Because the in-

gestion of foods contaminated with the bacteria are an immediate threat to the "health, safety, peace, comfort and general welfare" of the general public, State action to nullify that threat is a valid exercise of police power as shown in *Jordan*. But, unlike the situation in *Jordan*, the cheese here is not destroyed upon condemnation; rather, the State is required to establish a statutory violation permitting the continued condemnation or possible destruction. Here, the exclusion of the "probable cause to believe" language in section 196.570 does not appear to permit condemnation of dairy products absent a violation of section 196.545. Statutory guidelines detail post-condemnation requirements and Appellant is afforded a remedy by law if the product is not in violation of section 196.545.

Subsequently, the Milk Board condemned the cheese. Section 196.570 of the same dairy laws concerns the condemnation of product found to violate section 196.545. Where a violation is determined, the Milk Board's authority to condemn is explicit:

> The state milk board or its agent is authorized to condemn any illegal manufactured dairy product as defined in section 196.545, which is offered, exposed for sale, or sold for human food purposes, and shall identify same as an unlawful product.

Section 196.570.

Section 196.545(3) describes the unlawful sale of dairy products and includes milk or dairy products that are "adulterated by the addition of any unauthorized substance including water or other material foreign to milk[.]" Both Appellant's cheese and Appellant's manufactured milk fall within the definition of "food" as provided by statute. Missouri defines "food" as "articles used for food or drink for man or other animals, chewing gum, and articles used for components of any such article[.]" Section 196.010(7). Missouri defines "adulterated food" as:

> A food shall be deemed to be adulterated:
>
> (1) If it bears or contains any poisonous or deleterious substance which may render it injurious to health; but in case the substance is not an added substance such food shall not be considered adulterated under this subdivision if the quantity of such substance in such food does not ordinarily render it injurious to health; or
>
> (2) If it bears or contains any added poisonous or added deleterious substance which is unsafe within the meaning of section 196.085[.]

Section 196.070.[2] Missouri uses the verbatim language of the FDA statute[3] to further clarify the standard for the addition of a "poisonous or deleterious substance" to food:

> Any poisonous or deleterious substance added to any food except where such substance is required in the production thereof or cannot be avoided by good manufacturing practice, shall be deemed to be unsafe for purposes of the application of subdivision (2) of section 196.070[.]

Section 196.085.[4]

The presence of *L. Mono.* has been found to be an "added substance" to food even if the contamination occurs before the manufacturer's involvement. While there is no Missouri case defining the presence

---

**2.** The trial court indicated that this statute was only persuasive authority.

**3.** 21 U.S.C. § 346.

**4.** As discussed in footnote 2, it would follow that this statute would also only be persuasive authority.

of *L. Mono.*, the Eastern District of New York analyzed the equivalent FDA statute when the United States sought to enjoin Blue Ribbon Smoked Fish from delivering to interstate commerce "adulterated" food containing the bacteria. *U.S. v. Blue Ribbon Smoked Fish, Inc.*, 179 F.Supp.2d 30, 33 (E.D.N.Y.2001). The action followed multiple FDA inspections in which the presence of *L. Mono.* was discovered both within the plant and the product. *Id.* at 37–38. These findings of the bacterium were frequently followed by a recall of the contaminated products. *Id.* It was the defendant's contention *L. Mono.* was not an "added substance" to the product but the court held otherwise stating *L. Mono.* was "not an inherent natural constituent of fish but, rather, a bacterial organism present in the environment that comes in contact with, and contaminates, some fish." *Id.* at 46. Under this analysis, *L. Mono.* was defined as an "added substance." *Id.* at 47. The FDA statute read "[a]ny poisonous or deleterious substance added to any food ... shall be deemed to be unsafe" but permitted FDA approved tolerance levels for "added substance[s]" that were unavoidably present. *Id.* at 48–49, n. 9 (*quoting* 21 U.S.C. § 346). The court found the FDA maintained a "zero-tolerance policy" for the presence of *L. Mono.* because, even if unavoidable, the agency had not established a "tolerance level." *Id.* at 48–49.

Here, the presence of *L. Mono.* in Appellant's cheese triggers a violation of section 196.545(3). *L. Mono.* has been determined to cause *listeriosis* which places the "young, old, and pregnant" at great risk and is considered a "poisonous or deleterious substance which may render [food] injurious to health." *Id.* at 47–48 (*quoting* 21 U.S.C. § 342(a)(1)). Nothing on the record indicates *L. Mono.* occurs naturally

in cheese or that Appellant purposefully or knowingly added the bacteria to its cheese. But, as in *Blue Ribbon*, "added" does not require action on the part of the manufacturer, only the presence of a substance which is not naturally occurring.

The record does show the bacteria was found in Appellant's cheese in California and in at least some of the cheese stored at Appellant's plant. Here, the mere presence of *L. Mono.* in the cheese requires application of the Missouri statutes similar to that taken by the court in *Blue Ribbon.* Adhering to that application, and in concert with section 196.085, it is likely that no level of *L. Mono.* is acceptable in Appellant's cheese. Under this analysis, Appellant's cheese is an adulterated food and an unlawful product under section 196.545(3).

Appellant argues error in that the State's proof of "adulteration" was not required of all cheeses subject to the Milk Board's destruction order.[5] Following the California reports of contamination and embargo by the Milk Board, Appellant, choosing equally between cow and goat cheese, selected fourteen samples of market-ready cheese for additional testing. Test results showed six of the seven cow cheeses were found *L. Mono.* positive and all fourteen samples were found to contain *Staph A.* The record does not show any further testing on Appellant's inventory of cheese had occurred.

Testing of the entire inventory condemned on suspicion of contamination is not required to uphold condemnation as valid. The Eastern District of New York decided an *in rem* case concerning the seizure of 900 cases of canned peaches, each containing twelve cans. *U.S. v. 900 Cases Peaches,* 390 F.Supp. 1006, 1007 (E.D.N.Y.1975). The condemnation took

---

5. We note that this claim is not explicitly in the point relied on. We address it only in an attempt to give additional understanding to section 196.545.

place following FDA testing of thirty-five cans from a ninety-six can selective sample which found insect larvae and/or insect excreta in most of the cans. *Id.* at 1008. Following the FDA inspection, the defendant requested and received thirty of the ninety-six sample cans for analysis. *Id.* The defendant's testing showed contamination in eight of the cans. *Id.* The FDA conducted a final test "for worminess" on fifteen of the remaining cans and results showed "whole insect larvae or their equivalent" in six of the fifteen. *Id.* at 1008–09. Finding the levels of contamination exceeded the FDA's tolerance levels for canned fruit, the court entered judgment condemning all 900 cases. *Id.* at 1011.

While the court in *900 Cases* makes clear testing of an entire inventory is not required for condemnation, a minimum sample size required for condemnation is not defined. As such, Appellant infers this undefined threshold requires testing more than "0.048% of [Appellant's] cheese." The State, on the other hand, contends it met its burden having tested "fourteen percent of [Appellant's] inventory." In *900 Cases*, there were a total of 10,800 cans condemned.[6] There, the representative sample tested found adequate to uphold a condemnation was based on testing of 0.89%; or 0.46%; or possibly 5.5%.[7]

In the present case, Appellant and the State provide vastly different numbers for this Court with both being entirely accurate. Appellant's 0.048% is reached by using the weight of the cheese tested against the weight of the entire inventory, whereas the State's 14% is reached by using the number of cheeses tested against the number of different cheeses on hand.[8] The trial court did not err in determining that the entire block of cheese would be considered contaminated if there was bacteria on any portion of it. It was not suggested that each block be divided into pound increments for testing. Thus, a representative sampling of 14% of the cheese in violation of section 196.545 supported the condemnation of the entire inventory of cheese. Therefore, section 196.545(3) was violated.[9] The Milk Board was authorized by law to condemn the inventory of cheese. Point III is denied.

In the remaining points, Appellant claims error in the trial court's finding upholding other violations of section 196.545(1) and section 196.545(5). Because one violation supports the judgment, we need not address the remaining allegations of error. The judgment is affirmed.

DON E. BURRELL, P.J. and GARY W. LYNCH, J., Concur.

---

6. 900 cases × 12 cans each = 10,800 cans.

7. 96 cans out of 10,800 cans = 0.89%; 50 cans out of 10,800 cans = 0.46%; 50 cans representing 50 cases out of 900 cases = 5.5%.

8. Appellant used the statistic that 14 lbs of cheese out of 29,000 lbs in inventory was tested. The State used the statistic that 14 cheeses out of 100 cheeses in inventory were tested.

9. In its argument, Appellant claims that there was no adulteration per section 196.545 because there was nothing added by Appellant to its cheese that was either poisonous or deleterious, *i.e.* Appellant did not add either *L. Mono.* or *Staph. A.* to its cheese during production, nor did Appellant add anything to its cheese that would tend to change its color, character, or quality. To the extent that Appellant is arguing the merits of the evidence or that the State must prove the cheese "unfit for human consumption," that issue is not preserved in its point.