Margaret ARD and Robert Comely,
Petitioners–Respondents,

v.

SHANNON COUNTY COMMISSION,
Respondent–Appellant.

No. SD 32173.

Missouri Court of Appeals,
Southern District,
Division Two.

March 17, 2014.

David G. Neal, Eminence, MO, for appellant.

Roy E. Williams, Jr., West Plains, MO, for respondents.

JEFFREY W. BATES, P.J.

The Shannon County Commission (Commission) appeals from an amended judgment vacating a section of a county road. The judgment reversed the Commission's earlier decision to deny a § 228.110 application to vacate the road filed by Margaret Ard and Robert Comely (referred to individually as Ard and Comely, and collectively as Landowners).[1] The trial court decided the Commission's decision to deny Landowners' application was arbitrary and capricious. The Commission appealed and presents five points for decision. Because none of the Commission's points have merit, the trial court's judgment is affirmed.

**Standard of Review**

To determine the appropriate standard of review, an overview of the controlling statutory scheme is necessary. Landowners filed their application to vacate a section of the road at issue pursuant to § 228.110, which provides for vacation when a road or part thereof is "useless, and the repairing of the same an unreasonable burden upon the district or districts." § 228.110.1. This statute further provides that "[t]he county *may*, by order or ordinance, provide for notice and hearing of such petitions and for filing and hearing remonstrances against them." § 228.110.4 (emphasis added).[2] An appeal from a county commission's decision is governed by § 228.120, which provides that "[a]ny order of the county commission establishing or vacating a public road shall be subject to judicial review to the same extent and in the manner prescribed by chapter 536, RSMo" § 228.120.2 RSMo

---

1. All references to statutes are to RSMo Cum. Supp. (2009), except references to § 536.150 are to RSMo (2000).

2. Subsection 4 of § 228.110, stating that a county "may" hold a hearing, was added to the statute in 2007. *See* 2007 Mo. Laws 695.

(2000); *see also Davis v. St. Charles County*, 250 S.W.3d 408, 410 (Mo.App.2008).

▮ Chapter 536, governing administrative procedure and review, distinguishes between review of "contested cases and non-contested cases." *Furlong Companies, Inc. v. City of Kansas City*, 189 S.W.3d 157, 165 (Mo. banc 2006). As our Supreme Court explained in *Furlong*.

> Contested case review is controlled by sections 536.100 to 536.140. Contested cases provide the parties with an opportunity for a formal hearing with the presentation of evidence, including sworn testimony of witnesses and cross-examination of witnesses, and require written findings of fact and conclusions of law. The review of a contested case is a review by the trial court of the record created before the administrative body. Section 536.140. The trial court's decision upon such review is appealable, but the appellate court also looks back to the record created before the administrative body.
>
> Non-contested cases do not require formal proceedings or hearings before the administrative body. As such, there is no record required for review. In the review of a non-contested decision, the circuit court does not review the administrative record, but hears evidence, determines facts, and adjudges the validity of the agency decision. Under the procedures of section 536.150, the circuit court conducts such a hearing as an original action.
>
> In either a contested or a non-contested case the private litigant is entitled to challenge the governmental agency's decision. The difference is simply that in a contested case the private litigant must try his or her case before the agency, and judicial review is on the record of that administrative trial, whereas in a non-contested case the private litigant tries his or her case to the court. Depending upon the circumstances, this difference may result in procedural advantages or disadvantages to the parties, but in either situation, the litigant is entitled to develop an evidentiary record in one forum or another.

*Id.* (citations omitted).

▮ "The key to the classification of a case as contested or noncontested is the requirement of a hearing." *City of Valley Park v. Armstrong*, 273 S.W.3d 504, 507 (Mo. banc 2009); *see also State ex rel. Christian Health Care Of Springfield, Inc. v. Missouri Dept. Of Health And Senior Services*, 229 S.W.3d 270, 275 (Mo.App. 2007) ("the issue in determining whether a case is contested is not whether a hearing was actually conducted, but whether one was required by law"). Because the Commission in this case was not required to conduct a hearing by § 228.110, the circuit court proceeding was an original action, conducted pursuant to § 536.150, to review the Commission's determination of a non-contested case. *See State ex rel. Christian Health Care*, 229 S.W.3d at 274–75; *BBCB, LLC v. City of Independence*, 201 S.W.3d 520, 526–28 (Mo.App.2006); *see, e.g., Hedges v. County Court for Ray County*, 581 S.W.2d 73, 78 (Mo.App.1979) (landowners were entitled to judicial review by the circuit court, as a non-contested case under § 536.150, of the county court's order vacating a road).[3] Here,

---

**3.** Prior to the 2007 addition of subsection 4 to § 228.110 clarifying that the county "may" hold a hearing, *see* n. 2 *supra*, cases concerning road vacation typically had been reviewed pursuant to § 536.140. The exception was

*Hedges,* in which the western district of this Court held that "the so-called 'hearing'" preliminary to the county court's order vacating a road, "bears little resemblance to a 'contested case'" and therefore, "it follows that it

both Landowners and the Commission agree this is a non-contested case.

 Review of a non-contested case pursuant to § 536.150 means the circuit court "does not review the record for competent and substantial evidence, but instead conducts a *de novo* review in which it hears evidence on the merits, makes a record, determines the facts and decides whether the agency's decision is unconstitutional, unlawful, unreasonable, arbitrary, capricious or otherwise involves an abuse of discretion." *City of Valley Park,* 273 S.W.3d at 508. "The circuit court does not defer to facts found or credibility assessed by the agency and need not conform doubtful evidence to the agency's decision." *Id.* "The circuit court in a noncontested case acts to determine the evidence and give judgment from that evidence." *Id.*

 Following a circuit court's judgment in a § 536.150 proceeding to review an agency's decision in a non-contested case, an aggrieved party may appeal. *State ex rel. Christian Health Care,* 229 S.W.3d at 275. We review the judgment of the circuit court, rather than the decision of the administrative agency. *Id.* An appellate court "reviews the circuit court's judgment to determine whether its finding that the agency decision was or was not unconstitutional, unlawful, unreasonable, arbitrary, capricious, or the product of an abuse of discretion rests on substantial evidence and correctly declares and applies the law." *Missouri Nat. Educ. Ass'n v. Missouri State Bd. of Educ.,* 34 S.W.3d 266, 275 (Mo.App.2000). This standard requires an appellate court to accept the trial court's credibility determinations and view the evidence in the light most favorable to the judgment, while disregarding all contrary evidence and permissible inferences. *State ex rel. Koster v. Morningland of the Ozarks, LLC,* 384 S.W.3d 346, 350 (Mo. App.2012). Our summary of facts, which is set forth below, has been prepared in accordance with these principles.

**Factual and Procedural Background**

The county road at issue is CR 227. Landowners asked the Commission to vacate that part of CR 227 located on Landowners' properties (hereinafter referred to as the Ard and Comely section).[4] In August 2009, Landowners filed their original application with the Commission to vacate the Ard and Comely section "in accordance with § 228.110[.]" In December 2009, Landowners filed an amended application, along with a written request that the Commission notify them of the date and time of the Commission's next term. No notice of the next proceeding was provided to Landowners. On April 5, 2010, the Commission read the amended application and rejected it that same day without presentation of any evidence. There is no record of the

was a noncontested case" reviewed pursuant to § 536.150. *Hedges,* 581 S.W.2d at 79. All of the cases upon which the Commission relies were reviewed pursuant to § 536.140 and predate the 2007 amendment. *See Davis v. St. Charles County,* 250 S.W.3d 408, 410 (Mo. App.2008); *Ross v. Conco Quarry, Inc.,* 543 S.W.2d 568, 572 (Mo.App.1976); *Burrows v. County Court of Carter County,* 308 S.W.2d 299, 301 (Mo.App.1957). Because the 2007 amendment to § 228.110 makes it clear that a hearing is not required by law, § 536.150 required the circuit court to review the Commission's decision as a non-contested case.

*See State ex rel. Christian Health Care,* 229 S.W.3d at 274–75; *see also* § 536.010(4) (defining a contested case as "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing").

4. A drawing of the property, which was admitted in evidence as Landowners' Exhibit 9, is attached to this opinion. The boxed area of the drawing represents the Ard and Comely section.

Commission's proceeding that denied Landowners' application.

On April 30, 2010, Landowners filed a "Petition for Judicial Review" in the circuit court for review of the Commission's denial of Landowners' application. In this petition, Landowners alleged that: (1) they were authorized to seek judicial review pursuant to § 228.120.2 RSMo (2000); (2) they had no other adequate remedy at law; (3) the Commission failed to follow the statutory mandates of § 228.110; and (4) the Commission's actions were, *inter alia,* unlawful, arbitrary, capricious and/or unreasonable, and involved an abuse of discretion. The Landowners prayed that the court vacate the Commission's denial of Landowners' application and order vacation of the road. The Commission made no written response to the petition.

On September 1, 2011, a trial was held before the Hon. Harvey Allen. After the presentation of evidence, the matter was taken under advisement. Thereafter, the judge recused himself because of a possible conflict of interest. In January 2012, while waiting for the assignment of another judge, the parties entered into a "Stipulation to Submit Case to Court for Determination" that was filed with the court. The parties stipulated "to the Court's determination of this cause based upon review by the Court of the pleadings, filings including briefs filed by counsel in support of their clients' respective positions, and transcript of the proceedings in the above-styled cause, without presentation of further evidence by the parties herein." The case was assigned to the Hon. Randy Schuller.

In June 2012, the trial court entered a judgment reversing the Commission's decision to deny Landowners' application to vacate the Ard and Comely section. The

court found that the Ard and Comely section "is useless and that the repairing of same would be an unreasonable burden upon the district. . . ." In an amended judgment entered four weeks later, the court entered the same judgment but added a finding that the Commission's decision was "arbitrary and/or capricious." This appeal followed.[5] Additional facts necessary to the disposition of the case are included below as we address the Commission's five points on appeal. For ease of analysis, we will address the Commission's points out of order.

## Discussion and Decision

### *Point V*

■ The Commission's fifth point contends the trial court misapplied the law in reversing the Commission's denial of Landowners' application to vacate the Ard and Comely section because the court entered judgment upon an "unauthorized suit" by Landowners. The Commission argues the suit was "unauthorized" because "petitions for judicial review are available in 'contested cases' only, and [Landowners] failed to utilize one of the lawsuits authorized by section 536.150 RSMo for noncontested cases . . . which rendered the judgment void[.]" We disagree.

Section 536.150 provides:

When any administrative officer or body . . . shall have rendered a decision which is not subject to administrative review, determining the legal rights . . . of any person . . . and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or *other appropriate action* [.]

---

5. Landowners' motion to dismiss this appeal, which was taken with the case, is denied.

§ 536.150.1 (emphasis added); *see also Conseco Finance Servicing Corp. v. Missouri Dept. of Revenue*, 195 S.W.3d 410, 419 (Mo. banc 2006) (noting that § 536.150 "provides that a party may seek review of administrative action taken without a hearing and for which no other means of review is provided if the person alleges the action was unconstitutional, unlawful, unreasonable, arbitrary, or capricious").

Landowners argue that their petition for judicial review is an "appropriate action" to seek review of the Commission's action because no hearing was required before the Commission acted, and no other means for review is provided. We agree. *See, e.g., City of Valley Park*, 273 S.W.3d at 506 (authorizing judicial review pursuant to § 536.150 of a boundary commission's decision that was alleged to be arbitrary and capricious); *State ex rel. Saint Louis Charter School v. State Bd. of Educ.*, 376 S.W.3d 712, 718 (Mo.App.2012) (noting that the remedy of judicial review of administrative decision is available pursuant to § 536.150 as well as by a writ of mandamus). Therefore, Landowners were entitled to seek judicial review of the Commission's decision in this non-contested case pursuant to § 536.150. *See Hedges*, 581 S.W.2d at 80. As our Supreme Court explained in *Furlong:*

> The driving idea behind administrative law in Missouri is that the citizen is entitled to a fair opportunity to present the facts of his or her case. If this occurs in the context of the procedural formality and protection of a "contested case" before the administrative agency, the review in the courts can be limited to the record. If the citizen is denied this opportunity before the agency, then he or she is entitled to present such evidence as is necessary before the courts to determine the controversy.

*Furlong*, 189 S.W.3d at 167. Accordingly, Landowners' action was authorized, and the trial court did not misapply the law by entering a judgment in this action. Point V is denied.

*Points III and IV*

■ The Commission's third and fourth points contend the trial court misapplied the law in reversing the Commission's denial of Landowners' application to vacate the Ard and Comely section because the decision was "based entirely upon the review of a 'dry' record consisting of a transcript of a hearing presided over by a prior judge who later recused[.]" In Point III, the Commission argues that "such a procedure is prohibited thus rendering the judgment void, and even though the parties stipulated the judge could do what he did, such a stipulation is not valid[.]" In Point IV, the Commission presents a related argument that "the stipulation did not permit the judge to make any credibility determinations or findings of fact based upon that record[.]" We find no merit in either point.

Similar arguments were raised in *Bauer v. Bauer*, 38 S.W.3d 449 (Mo.App.2001). There, a successor judge obtained a written stipulation by the parties that he could decide the case based solely upon the record in the case. *Id.* at 455. On appeal, the appellant claimed, *inter alia*, that the trial court erred in entering its judgment because the "judge who entered the judgment did not hear the testimony and evidence in the case and was, therefore, not afforded an opportunity to judge the credibility of the witnesses, which was absolutely necessary to the entry of the court's judgment." *Id.* The western district of this Court rejected that argument for the following reason:

> [I]t is well settled that, "[u]nder Missouri law, a successor judge is without power to render a judgment based on

testimony and evidence heard by his predecessor absent a stipulation by the parties." *Cent. Bank of Kansas City v. Costanzo,* 873 S.W.2d 672, 674 (Mo.App. 1994) (*citing Helton Constr. Co. v. Thrift,* 865 S.W.2d 419, 422–23 (Mo.App. 1993); *Lansing v. Lansing,* 736 S.W.2d 554, 558 (Mo.App.1987); *Smith v. Smith,* 558 S.W.2d 785, 790 (Mo.App.1977)). In our case, the record reflects that the parties did stipulate, in writing, that the successor circuit judge, based solely on his reading of the transcript, could decide the case and render judgment accordingly. As such, the appellant cannot now be heard to complain that the successor judge was prohibited from deciding the case and entering his judgment because he had not heard the testimony and evidence.

*Id.* at 455–56.

We reach the same conclusion here. Prior to the assignment of another judge in this case, the Commission voluntarily entered into a written stipulation, which was filed with the court. The Commission stipulated that the successor judge could decide the cause "without presentation of further evidence by the parties" and "based upon review by the Court of the pleadings, filings including briefs filed by counsel in support of their clients' respective positions, and transcript of the proceedings in the above-styled cause[.]" The Commission cannot now be heard to complain that the successor judge was prohibited from deciding the case and entering judgment because he had not personally heard the testimony and evidence. The Commission's argument also ignores the well settled rule that "[a] party may not complain on appeal of an alleged error in which he joined, acquiesced or invited by his conduct at trial." *Leeper v. Scorpio Supply IV, LLC,* 351 S.W.3d 784, 795–96 (Mo.App.2011). Therefore, the trial court did not misapply the law by entering judgment after reviewing the earlier trial record in accordance with the parties' stipulation. Points III and IV are denied.

### Point I

The Commission's first point contends the trial court misapplied the law in reversing the Commission's decision to deny Landowners' application to vacate the Ard and Comely section because the court's findings do "not provide legal justification for its vacation . . . ." The following facts are relevant to our disposition of this point.

At the September 2011 trial, Landowners called Ard and her daughter, Jennifer Ferguson (Ferguson), as witnesses. Ferguson lived 50 yards away from Ard and was a rural mail carrier for the area. The Commission's witnesses were Dale Counts (Counts), the Commissioner for Shannon County (County); and Charlie Bays (Bays), a county resident. Viewing the evidence in the light most favorable to the judgment as we must, *State ex rel. Koster,* 384 S.W.3d at 350, the following facts were adduced at the trial.

The Ard and Comely section is located within the bed of Grassy Creek, and that part of the road repeatedly washes out when the creek floods. Around 1968, the Conservation Road (*see* attached Exhibit 9) was constructed between Mo. Hwy. 19 and the Current River. The Conservation Road is a well maintained road located on higher ground that is out of the creek bed. Ferguson uses the Conservation Road, rather than CR 227, because the latter road is "not in good shape. It has big rocks in it. When the flood came here not long ago, it has big gulleys. You cannot take a car up it." A passenger car could not traverse the road because the car "would have the underneath tore out from under it." Ferguson, as a rural mail carri-

er, is familiar with the condition and maintenance of county roads. Compared to CR 227, Ferguson testified that other county roads are regularly and properly maintained, "in good shape," and as different from CR 227 as "black and white[.]"

The Staples Cemetery, which is open to the public, lies just off Highway 19 on a county road that continues beyond to its termination at CR 227 on the Ard property. According to Ard, there is no reason why anyone would visit the cemetery by traveling on CR 227 through the Ard and Comely section. Ard and her family used the Conservation Road when it opened, while the Ard and Comely section was kept open only "to hunt cattle and different things." Ferguson identified photographs of the Ard and Comely section, which depicted CR 227 in its typical condition over the preceding three-year period. Ferguson testified that this portion of the road was actually "in worse shape than those [photographs] right now." The 35 photographs of CR 227 were received in evidence.

The county road crew graded CR 227 "[a]bout once a year" but "in just places, like they pick out the wors[t] places." The road was impassable to passenger cars and dangerous for any vehicle, with high banks "right along the edge of where the traveled portion of the road is[.]" Ard and Ferguson erected a "caution" pole to warn "someone, like a four-wheeler or something like that [who] would get over in it and wreck." Once, a motorist, who was injured on the Ard and Comely section, had to be extricated by a four-wheel-drive vehicle, because a car or two-wheel-drive pickup could not have "gotten up that road" to rescue him. The dangerous and impassable Ard and Comely section also had caused many unwitting motorists to become stuck, requiring Ard's assistance to pull them out. She testified that this had happened "[t]oo many" times. The County did not compensate Ard for her "time and energy to pull these people out[.]"

Even when the road was graded, it would only "stay good for a little while." In 1992, the County paid a dozer operator $800 in an attempt to get the road out of the creek bed. This work was unsuccessful. Ard testified that the effort was "wasted" because the road crew "hauled some rocks in there ... and some clay; and it went right down the creek." Ard testified that the Ard and Comely section could not be reasonably maintained unless the road was moved "out of the creek," which would cost "a bunch of money" and further encroach on Ard's land. Both Ard and Comely had marked their private property with purple paint. Landowners did not permit hunting, fishing or sightseeing on their land.

No one lives on CR 227, other than Ard and Comely. Ard had only seen vehicles on the road "[v]ery, very rarely." She testified that she has encountered problems with theft, vandalism, and trash and debris being dumped on her property. During the few years prior to trial, Ard had never seen anyone traveling on the Ard and Comely section for a business purpose, like hauling hay or cattle. At no time after Ard instituted the road closure proceedings had the Ard and Comely section been passable by car or two-wheel-drive pickup. Ard knew of no other county road in such a condition.

Ferguson testified that there was no "good reason" why the public would use the Ard and Comely section, since "it's all private ground and it's all posted[.]" The road does not serve "any useful purpose to the public at large[.]" Ard testified that it would be an "unreasonable burden" on the County to maintain the Ard and Comely section as a "usable, passable road" and

that there would be "no purpose to . . . spend any money on it." As of September 1, 2011, CR 227 had not been graded "since the flood that we had earlier in the year[.]"

Testifying for the Commission, Counts admitted that the only maintenance performed on CR 227 in 2011 was to fill "in the worse places just so people could get up and down it." The County was unable to perform any regular maintenance because, according to Counts, "we're actually waiting on FEMA on a bunch of roads . . ." The County was focusing its "interest in other areas that are more needed" and "hitting the mail routes and the bus routes[.]" Counts also testified that he opposed the closing of any county roads:

Q. Okay. Regardless of the utility of the road, you just—you're just opposed—you have a hard-line rule you're not going to agree to close any road for any reason, true?

A. Yes, sir.

Q. That's correct, right?

A. Yes.

Q. Regardless of the utility and regardless of the costs, true?

A. No, I'm not for closing no roads.

Q. Okay. So whatever—regardless of the reason that might be expostulated or given to you as to—as to a reason why a road should be closed . . . you just say "I'm not going to listen to that because our policy is we're not closing any road for any reason," right?

A. Right.

Counts agreed that Landowners were only asking to close the section of CR 227 on their own property and that anyone hunting, fishing, or engaging in other activities on their land would be "violating the landowner's rights . . . trespassing[.]"

Bays, who lives in Eminence, testified that he traveled the Ard and Comely sec-

tion to stop and let his "dogs loose" to run, often on Ard's property. On cross-examination, Bays admitted that he did not have permission to let his dogs run on Landowners' property.

The trial court found in favor of Landowners. The court found that the Ard and Comely section was "useless and that the repairing of same would be an unreasonable burden upon the district, as evidence presented revealed that [the Ard and Comely section] has, and continues to be in substantial disrepair preventing ingress/egress by normal means and contains many dangerous or potentially dangerous hazards." The court also found that "the roadway has been used in limited fashion, primarily for poaching, trespassing on private property, disposing of trash and other debris and allowing access to private property for potential theft and other illegal activity." The court found that the "Commission did not have adequate funds to maintain the road in substantial repair, supported by photographs submitted into evidence that depict the road's significantly deteriorated condition." Based upon these and other findings, the trial court decided that "the decision of the Shannon County Commission was arbitrary and/or capricious." The court therefore reversed the Commission's decision and vacated the Ard and Comely section pursuant to § 228.110.

The Commission's first point contends the trial court's findings do not provide a legal justification for vacation of the Ard and Comely section. The Commission argues that "as long as [the Ard and Comely section] is used by the public for *any purpose,* no matter the frequency or the state of its repair, application for its termination must be denied." (Emphasis added.) The Commission bases that argument upon *Burrows v. County Court of Carter County,* 308 S.W.2d 299 (Mo.App.

1957) and *Ross v. Conco Quarry, Inc.,* 543 S.W.2d 568 (Mo.App.1976). Because these cases are distinguishable, they do not support the Commission's argument.

■ As mentioned previously, § 228.110 provides for vacation when a road or part thereof is "useless, and the repairing of the same an unreasonable burden upon the district or districts." § 228.110.1. "Of course, the term 'useless,' as employed in the statute, should not be given an arbitrary and absurd interpretation, and the uselessness contemplated and required to permit vacation must be a practical, not an absolute, uselessness." *Burrows,* 308 S.W.2d at 304. "But, 'useless' is not here synonymous with 'unnecessary' or 'unrequired' and we perceive no reason why it should not be accorded its usual, ordinary and accepted meaning, i.e., 'having, or being of, no use; unserviceable; producing no good end; answering no desired purpose.'" *Id.* (citations omitted).

In *Burrows,* petitioners sought to vacate a valley road connecting "points A and B[.]" *Id.* at 302. An alternate route was available, but extended travel between those points about two miles. *Id.* In addition, both routes were subject to flooding in times of high water and became impassible. *Id.* at 304. There also was evidence of "the convenience and utility of the valley road, particularly for usage by trucks[.]" *Id.* The petitioners' own evidence showed "a continuous and continuing public use of the valley road[.]" *Id.* at 305. Given that evidence, this Court determined that the petitioners failed to show the valley road was "useless" as required by § 228.110 and therefore were not entitled to an order of vacation. *Id.*

In *Ross,* this Court similarly determined that a "total lack of utility" of a road was not established by the record. *Ross,* 543 S.W.2d at 577. There, traffic counts established that between 67 and 396 vehicles traveled the subject road in five separate 18–hour periods, and the evidence showed that closing the road would cause "a serious inconvenience" to the general public. *Id.* at 576–77.

Both *Burrows* and *Ross* are factually distinguishable from the case at bar. Here, unlike *Burrows,* the Ard and Comely section is in the bed of Grassy Creek and subject to frequent flooding that damages the roadbed. The alternate Conservation Road is a good, well maintained road that is not subject to flooding because it is located on higher ground. The Ard and Comely section does not provide closer access to the river and is the longer route to reach the cemetery. Unlike either *Burrows* or *Ross,* the Ard and Comely section is traveled "[v]ery, very rarely" and typically is impassable and dangerous to those traveling by car or two-wheel-drive pickup. The trial court's findings are sufficient to establish that the road was "useless," as that word is used in § 228.110. The evidence showed the practical uselessness of the Ard and Comely section, which is sufficient. *See Burrows,* 308 S.W.2d at 304.

Additionally, the Commission's own evidence established that it would be an unreasonable burden on the County to maintain the Ard and Comely section. Counts admitted that the County was "waiting on FEMA on a bunch of roads[.]" The County was focusing only on the "mail routes and the bus routes" and did not have the funds to maintain CR 227. In addition, the trial court reasonably could have concluded that the continued cost of repair and maintenance of the Ard and Comely section was unsustainable because the road was located in the bed of Grassy Creek.

Thus, there is substantial evidence to support the trial court's findings that the Ard and Comely section is useless and that continued repair and maintenance would

be an unreasonable burden. Because these findings provide a legal justification for vacation of the Ard and Comely section pursuant to § 228.110, the trial court did not misapply the law in reversing the Commission's denial of Landowners' application. Point I is denied.

## Point II

■■■■ The Commission's second point contends the trial court erred in reversing the Commission's denial of Landowners' application to vacate the Ard and Comely section because the "Commission has absolute discretion in deciding whether or not to close a public road." The Commission therefore argues that "the court misapplied the law by exercising its discretion and ordering the road closed rather than deferring to the County Commission's rights of discretionary action." The Commission relies on a provision of § 536.150.1, which provides:

> [I]n any such review proceeding the court may determine the facts relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and may hear such evidence on such question as may be properly adduced, and the court may determine whether such decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion; and the court shall render judgment accordingly, and may order the administrative officer or body to take such further action as it may be proper to require; but *the court shall not substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting or withholding of a privilege is committed by law to the sole discretion of such administrative officer*

> *or body, such discretion lawfully exercised shall not be disturbed.*

*Id.* (emphasis added). This provision "does not abridge the role of the court as factfinder but rather confines the judgment to exclusively legal considerations." *Phipps v. School Dist. of Kansas City*, 645 S.W.2d 91, 95 (Mo.App.1982); *Missouri Nat. Educ. Ass'n*, 34 S.W.3d at 280. "Although the trial court may not infringe on authority reserved to the legislative or executive branches, the court must decide whether the agency acted in an unconstitutional, unlawful, unreasonable, arbitrary, capricious, or abusive manner." *Missouri Nat. Educ. Ass'n*, 34 S.W.3d at 280. "An appellate court, in turn, reviews the trial court's judgment to determine whether its finding that the agency decision was or was not lawful rests on substantial evidence and validly decides the questions of law." *Id.; see also State ex rel. Koster*, 384 S.W.3d at 350.

The Commission argues that the justification for the court's judgment is "based entirely on factual determinations" and not on "exclusively legal considerations" as required. We disagree.

Here, the trial court specifically determined that the Commission's decision to deny Landowners' application to vacate the Ard and Comely section was "arbitrary and/or capricious," both legal grounds for consideration under § 536.150.1. "Arbitrary and capricious" has been defined as "willful and unreasoning action, without consideration of and in disregard of the facts and circumstances." *Beverly Enterprises–Missouri Inc. v. Dept. of Social Services, Div. of Medical Services*, 349 S.W.3d 337, 345 (Mo.App.2008) (citation omitted). The evidence supports such a determination here. Counts testified that he would categorically refuse to close any county road, regardless of cost of maintenance or the utility of the road, which

shows a complete disregard for the facts and circumstances that affect vacation of a road. *See id.;* § 228.110.1. Therefore, the trial court's determination that the Commission's decision was arbitrary and capricious is supported by substantial evidence, and the trial court did not misapply the law in its review. *See Missouri Nat. Educ. Ass'n,* 34 S.W.3d at 280.[6] Point II is denied.

The judgment of the trial court is affirmed.

DON E. BURRELL and MARY W. SHEFFIELD, JJ., concur.

6. Lastly, the Commission argues that its alleged "arbitrary and capricious" decision cannot be reviewed for "substantial evidence" here because there is no record of the Commission's proceedings below. The Commission continues to confuse the standard of review under § 536.140 and § 536.150. In a non-contested case review under § 536.150, the Commission's proceedings are not reviewed; instead the circuit court "conducts a hearing *de novo* [.]" *Phipps,* 645 S.W.2d at 95. Consequently, the circuit court "does not *review* evidence but *determines* evidence, and on the facts as found adjudges the validity of the agency decision" confining "the judgment to exclusively legal considerations." *Id.* (emphasis in original); *see City of Valley Park,* 273 S.W.3d at 508; *see also Hauk v. Scotland County Commission,* 429 S.W.3d 459, ——, n. 6, 2014 WL 707170, *3 n. 6 (Mo.App.E.D., filed February 25, 2014) (because in a non-contested case the trial court reviews the decision of an administrative agency *de novo,* the "court is not required to give any deference to the agency's decision"). There is no question that the trial court followed the proper procedure in reviewing the Commission's decision in this case.